JOHN J. HARTFORD/50714
Attorney at Law
1423 Avondale Road
Hillsborough, CA 94010
Tel.: 650/445-9365
Fax: 650/560-6363
Email: johnjhartford@yahoo.com

Attorney for Defendant
AMERICAN TECH.
NETWORK CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARSON INDUSTRIES INC., | ) NO. C 14-01769 NC |
| | ) |
| Plaintiff, | ) **DECLARATION OF JAMES MUNN IN** |
| | ) **OPPOSITION TO MOTION IN LIMINE** |
| v. | ) **NO. 7** |
| | ) |
| AMERICAN TECH. NETWORK CORP. ET | ) |
| AL, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| _____ | ) |

I, James Munn, declare as follows:

1. I am over eighteen years of age and have personal knowledge of the facts stated herein. If called upon to do so, I could and would testify competently thereto.

2. I am the president of AMERICAN TECH. NETWORK CORP. ("ATN"), Defendant herein, and at all relevant times have been its custodian of records, which are all kept in the course of ATN's regularly conducted business activity. I have personal knowledge of and oversee the record-keeping practices of ATN. It is a regular practice of ATN's business activity to either create or file all records by a person with knowledge at or near the time of the receipt by ATN of information that is included in each record. The creation and filing of all records at ATN is done by persons whose

trustworthiness has been thoroughly ascertained and whom at all relevant times I have closely supervised.

3. ATN did not receive the disputed shipment of 100 units, while the terms of the written contract between the parties provides for ATN's liability for payment upon delivery. ATN has maintained that Carson confused the shipment in question with another shipment of 100 units which Carson incorrectly perceived as a shipment of 90 units and which is evidenced by a conflict between the original packing slip and original invoice pertaining to it. While Carson ordinarily shipped the kits to ATN freight collect on ATN's account and displayed the name of the carrier in its packing slips and invoices, it failed to do so in regard to the disputed shipment and never billed ATN for what would have been considerable freight charges. Carson also never produced to ATN, either before or after the commencement of this litigation during the discovery, any shipping records demonstrating that the disputed shipment was delivered to ATN or at least that it was made by Carson. Invoices and account statements pertaining to ATN's accounts with FedEx and UPS in the relevant time frame do not show the shipment in question. Apparently in order to demonstrate that it was not mistaken, Carson altered the packing slip pertaining to the shipment where there was a conflict between the packing slip and the invoice, by altering the amount in the packing slip to match the amount of the invoice. Carson also altered the packing slips and invoices pertaining to both shipments by inserting FedEx tracking numbers in all of them, which were not present in the original documents received by ATN and were never present in any packing slips and invoices pertaining to all Carson's other shipments[1]. The tracking numbers were added to said documents by Carson at the time when it was too late to track the shipments or verify their authenticity with FedEx. All altered packing slips and

---

[1]   The tracking numbers are also present in obviously altered packing slips and invoices pertaining to two other shipments which are not relevant to this motion but were presented in Carson's motion for summary adjudication in support of its other claims.

invoices bear Carson's address that is different from its address at the time, different from the address shown in the original documents, and is the address which was Carson's future address at the time and which during the pendency of this litigation has been its current address. Carson's manually maintained ledger where all Carson's shipments were logged in does not contain the number of Carson's invoice which ATN never received and which Carson claims to pertain to the shipment that it allegedly sent but which ATN never received.

4. From the very beginning of ATN's relationship with Carson, ATN experienced many problems with every aspect of the relationship, but because it entered into multiple contracts with Foreign Military Sales (FMS), a branch of the US military, for large quantities of PVS-7 night vision goggles, it was desperate for goggle kits primarily consisting of the goggle housings. Attached hereto as **Exhibit 1** and incorporated herein by reference is a true copy of an email sent by Dmitry Rocklin, then president of ATN, on February 3, 2010, among other things stating as follows:

> "I was trying to establish a new relationship and save a little money, but so far this is a nightmare. Also, I think your logistics [are] out of order. Last invoice was for 25 units, but I think we actually [got] 15 and 5. Below actual numbers by my warehouse manager.

5. ATN received from Carson a total of 410 goggle kits on its purchase order No. 11453-B for 500 kits. True copies of said purchase order and of the terms and conditions of the written contract between the parties incorporated in the purchase order is attached hereto as a Collective **Exhibit 2** and incorporated herein by reference. ¶ 3 of the terms and conditions provided as follows:

> "Seller assumes all risk of loss until receipt by ATN. Title to the goods shall pass to ATN upon receipt by it of the goods at the designated destination."

6. Carson is claiming that according to its records it shipped to ATN all 500 kits on purchase order No. 11453-B and billed ATN for all 500 kits.

7. ATN's records show that it received only 410 kits on said purchase order.

8. Attached hereto as **Exhibit 3** and incorporated herein by reference are true copies of original packing slips received by ATN with Carson shipments and the corresponding Carson invoices pertaining to shipments of goggle kits made by Carson between September 13, 2015, and December 17, 2015.

9. ATN received a shipment of 100 kits made by Carson on purchase order No. 11453-B on or about September 13, 2010, with packing slip No. 11028 (Exh. 3, bates No. 10755) and corresponding invoice No. 3242 (Exh. 3, bates No. 10753), and it is undisputed that it was received by ATN. Said shipment was sent freight collect on ATN FedEx account, and ATN was billed by FedEx for the shipping charges.

10. Carson claims that it made a shipment of 100 kits on September 10, 2010 on purchase order No. 11453-B, with packing slip No. 11024 dated September 10, 2010, and that it issued invoice No. 3237 for those 100 kits. ATN never received those kits, never received the packing slip No. 11024, and never received the invoice No. 3237.

11. All prior shipments made by Carson between 2009 and September 2010 and all subsequent shipments after the "missing" shipment made by Carson freight collect were received by ATN. Carson never billed ATN for shipping charges on the "missing" shipment, which makes no sense if the shipment was indeed made.

12. There was no reason for Carson to make that particular shipment on its own account and pay considerable shipping charges.

13. Carson's handwritten account ledger bates stamped C0018 through C0022 was dedicated to its shipments to ATN, which Carson produced with its Rule 26 disclosures herein. It does not contain invoice No. 3242. A true copy of said account ledger produced by Carson herein as part of 27

pages of documents produced with Carson's Rule 26 disclosures[2], is attached hereto as **Exhibit 4** and incorporated herein by reference.

14. Carson never provided either a proof of the shipment in question or a proof of delivery to ATN and failed to produce it during the discovery herein, which it was obligated to do, provided it indeed made the shipment in question. ATN received invoice No. 3245 (Exh. 3, bates No. 10769) dated September 17, 2010, for a shipment of the kits on purchase order No. 11453-B.

15. In said invoice Carson billed ATN for 90 kits, but ATN received 100 kits with packing slip No. 11031 (Exh. 3, bates No. 10766) dated September 17, 2010, included with those 100 kits, which showed that the shipment consisted of 100 kits. Carson claims that said shipment included 90 kits, which ATN disputes. Said shipment was sent freight collect on ATN FedEx account, and ATN was billed by FedEx for the shipping charges.

16. ATN then received invoice No. 3249 (Exh. 3, bates No. 10778) dated September 17, 2010, for a shipment of 30 kits on purchase order No. 11453-B, and received 30 kits with packing slip No. 11035 (Exh. 3, bates No. 10779 ) dated September 17, 2010, which is undisputed. Said shipment was sent freight collect on ATN FedEx account, and ATN was billed by FedEx for the shipping charges.

17. ATN received invoice No. 3300 (Exh. 3, bates No. 10786) dated October 15, 2010, for a shipment of 50 kits on purchase order No. 11453-B, and received 50 kits with packing slip No. 11080 (Exh. 3, bates No. 10786) dated October 15, 2010, which is undisputed. Said shipment was sent freight collect on ATN FedEx account, and ATN was billed by FedEx for the shipping charges.

18. ATN received invoice No. 3303 (Exh. 3, bates Nos. 10795 and 10794) dated October 15, 2010, for a shipment of 30 kits on purchase order No. 11453-B, and received 30 kits with packing

---

[2]   For comparison, ATN produced over 1,000 pages of documents, including copies of all Carson's packing slips and invoices, with its Rule 26 disclosures.

slip No. 11083 (Exh. 3, bates Nos. 10812 and 10814) dated October 15, 2010, which is undisputed[3]. Said shipment was sent freight collect on ATN FedEx account, and ATN was billed by FedEx for the shipping charges.

19. ATN subsequently received other shipments pertaining to other purchase order numbers, which are undisputed and evidenced by the copies of the original packing slips and invoices received by ATN, all included in Exh. 3 herein. All said shipments were sent freight collect on ATN FedEx account, and ATN was billed by FedEx for the shipping charges. All invoices and packing slips pertaining to all Carson's shipments made prior to January 2011 bore Carson's then current address, 5959 Shallowford Road, Ste. 329, Chatanooga, TN 37421.

20. On June 4, 2015, my deposition was taken herein by David DeGroot, attorney for Plaintiff. Attached hereto and incorporated herein by reference are true copies of the documents pertaining to said deposition, as follows:

**Exhibit 5:** Selected portions of the certified transcript of my deposition (Munn Depo.)

**Exhibit 6:** Exhibit 2 in Munn Depo. Testimony authenticating this document can be found in Munn. Depo., at 11:6-21.

**Exhibit 7:** Exhibit 3 in Munn Depo. Testimony authenticating this document can be found in Munn. Depo., at 17:5-12.

**Exhibit 8:** Exhibit 18 in Munn Depo. Testimony authenticating this document can be found in Munn. Depo., at 82:4-14.

**Exhibit 9:** Exhibit 19 in Munn Depo. Testimony authenticating this document can be found in Munn. Depo., at 82:4-14.

---

[3]   Invoice No. 3303 and packing slip No. 11083 included an additional 70 kits which pertained to another purchase order No. 11533-B, which is also undisputed.

**Exhibit 10:** Exhibit 20 in Munn Depo. Testimony authenticating this document can be found in Munn. Depo., at 82:4-14.

**Exhibit 11:** Exhibit 21 in Munn Depo. Testimony authenticating this document can be found in Munn. Depo., at 82:4-14.

21. Exhibits 8 through 11 were never produced in Carson's discovery.

22. During my deposition, Mr. DeGroot marked as Exhibit 3 (Exh. 7 herein) a copy of a group of documents which included previously produced by ATN two copies of the original packing slip No. 11031[4], and a copy of invoice No. 3245[5].

23. Mr. DeGroot also marked as Exhibits 18, 19, 20, and 21 two packing slips and two invoices (Exhibits 8 through 11 hereto). Said documents were introduced at the same time as Exhibits 16 and 17 in my deposition, which are not relevant to this motion. Mr. DeGroot stated on the record that exhibits 16 and 17 "came from ATN" and that Exhibits 18 through 21 "came from Carson". I did not notice any discrepancies of Exhibits 18 through 21 in my deposition (Exhs. 8 through 11) from the original documents at that time.

24. When Mr. DeGroot started questioning me on Exhibits 18 and 19 in my deposition (Exhibits 8 and 9), he stated that they were related to Exhibit 2 in my deposition (Exh. 6) and was seeking that I admit that Carson shipped 90 kits as documented by packing slip No. 11031, Exhibit 18 in my deposition (Exh. 8), and invoice No. 3245, Exhibit 19 in my deposition (Eh. 9), which he presented.

25. I, in turn, referred Mr. DeGroot to Exhibit 3 in my deposition (Exh. 7) and pointed out to him that the original packing slip which came from ATN differed from the packing slip No. 11031

---

[4] The two copies differed by notations made by ATN receiving employees, one in English and another one in Russian.
[5] Apparently through inadvertence of Plaintiff's attorney, Exhibit 3 included two identical sets of documents.

presented by him as Exhibit 18 to my deposition (Exh. 8) in that the packing slip presented by Mr. DeGroot was showing a shipment of 90 kits while the original packing slip No. 11031 produced by ATN which was part of Exhibit 3 in my deposition (Exh. 7) showing a shipment of 100 kits.

26. A discussion then ensued in which I stated "it does not square with our records" and Mr. DeGroot asked "[e]ven though that's what their records show?".

27. While said discussion was taking place, I looked at ATN's attorney Mr. Hartford to see his reaction to the discrepancy that I pointed out, but he did not respond[6]. Not receiving a reaction from Mr. Hartford, I did not realize that said discrepancy resulted from what I now understand to be egregiously inappropriate alteration of the packing slip by Carson and did not understand the resulting implications other than that Carson's packing slip No. 11031 was showing a wrong number of units shipped. I did not look closely at exhibits 19, 20, and 21 in my deposition (Exhibits , 10, and 11) at that time and thus did not notice any discrepancies in them from the original documents with the same numbers. I also did not notice any other discrepancies in Exhibit 18 in my deposition (Exh. 8) at that time.

28. It has always been ATN's contention that Carson's failure to ship the remaining 90 kits on ATN's purchase order No. 11453-B was due to Carson's confusion resulting from the discrepancy between invoice No. 3245 (Exh. 3, bates No. 10769) and packing slip No. 11031 (Exh. 3 bates No. 10766) in the number of units, coupled with the fact that several other shipments of 100 units each pertained to the same ATN purchase order number. Moreover, the shipment in question of 100 units was supposedly shipped on September 10, 2010, the same day as the prior shipment of 100 units, and the next shipment of 100 units was shipped on September 13, 2010, the same day when the mistake

---

[6]   Some time after Mr. Hartford informed me on September 15, 2015 that he discovered that said documents were altered, he admitted to me that during my deposition he completely missed my discussion with Mr. DeGroot about said discrepancy.

was made in regard to the shipment of 100 units which was billed by Carson as 90 units, with the invoice No. 3245 (Exh. 3, bates No. 10769) failing to correspond to the packing slip No. 11031 (Exh. 3 bates No. 10766).

29. Another reason for ATN's contention that Carson made a mistake and never made the disputed shipment, altered packing slip No. 11024 (Exh. 10) and altered invoice No. 3237 (Exh. 11), was that ATN was never billed for its shipping charges by either FedEx or UPS. True copies of ATN FedEx and UPS account statements/invoices covering the relevant time frame are attached hereto as a collective **Exhibit 12** and incorporated herein by reference.

30. Notwithstanding the fact that Plaintiff's counsel was put on notice during my deposition that there was a discrepancy between the original packing slip No. 11031 produced by ATN (Exh. 3, bates No. 10766) and the altered packing slip No. 11031 (Exhibit 8 herein) which came from Carson, in its motion for summary adjudication Carson used the same documents, exhibits 18, 19, 20, and 21 in my deposition as respective exhibits 5, 6, 7, and 8 to the supporting declaration of Richard J. Barrett (Barrett Decl.) (Exhibits 8, 9, 10, and 11 herein). When I read the motion for summary adjudication prior to making my declaration in opposition, I did not notice that Exhibits 3 through 8 to Barrett Decl. were altered. A true copy of Barrett Decl. with Exhibits 1 through 9 is attached hereto as a collective **Exhibit 13** and incorporated herein by reference.

31. On September 15, 2015, I received a telephone call from Mr. Hartford, and he informed me that while preparing the list of trial exhibits he discovered for the first time that exhibits 3, 4, 5, 6, 7, and 8 to Barrett Decl. in support of Plaintiff's motion for summary adjudication were not authentic.

32. All original packing slips and invoices issued by Carson before and after the dates appearing in exhibits 3, 4, 5, 6, 7, and 8 to Barrett Decl. in support of the motion for summary adjudication, up until the early 2011, show Carson's address as 5959 Shallowford Road, Ste. 329, Chatanooga, TN 37421 (see Exh. 3).

33. On January 5, 2011, I received an email from Carson with an attached letter informing ATN that Carson was moving to Alpharetta, GA, on January 12, 2011. A true copy of said email and letter is attached hereto as a collective **Exhibit 14** and incorporated herein by reference[7].

34. Carson's typical packing slip displayed the number of units remaining to be shipped after the shipment was made directly below the number of units being shipped.

35. After I learned that Carson used invoices and packing slips that were altered and contained tracking numbers which were not present in the originals, I attempted to track the shipments with FedEx and UPS.

36. I was informed by FedEx and UPS that the tracking numbers contained in the altered invoices were typical for FedEx. When I contacted FedEx in an attempt to track the shipments or to subpoena its records pertaining to the tracking numbers inserted by Carson, I was informed that tracking numbers were recycled within one after use year and were impossible to be ascertained after being recycled.

37. When I inspected the altered exhibits 3, 4, 5, 6, 7, and 8 to Barrett Decl. very closely, I discovered the following:

a) All of them, unlike all of the original ones pertaining to the same time frame, contained Carson's future address in Alpharetta, GA;

b) All of them, unlike all of the original invoices and packing slips, bore FedEx tracking numbers that were never part of any original packing slips and invoices;

c) None of the packing slips contained the number of units remaining to be shipped after the shipment was made;

---

[7]  The attached letter was in .doc format and was formatted by the drafter such that whenever the file is opened, the present date appears. That is why the copy of the letter attached hereto displays the date of July 2, 2014, the date when said document was printed in order to be included in ATN's Rule 26 disclosures.

d) Packing slip No. 11031 (Exh. 3, bates No. 10766) differed from the original by the number of units being 90 instead of 100, which corresponded to invoice No. 3245 (Exh. 3, bates No. 10769) as if there was never a discrepancy between said packing slip and invoice.

38. I am confident that the shipment accompanied by packing slip No. 11031 contained 100 units because: a) employees in the ATN receiving department take their job very seriously and b) because, according to FedEx records, the shipment that was accompanied by packing slip No. 11028 (Exh. 3, bates No. 10755) also consisted of 100 units and was shipped on the same purchase order one day earlier, matched in weight  the shipment accompanied by packing slip No. 11031 (Exh. 3, bates No. 10766) to a sufficient degree to preclude the possibility of it differing by 10 units.

39. Alterations in packing slips and invoices are found only in four documents introduced at my deposition as exhibits 18, 19, 20, and 21[8] (Exhibits 8, 9, 10, and 11), and two additional documents, exhibits 3 and 4 to Barrett Decl. (Exh. 13). No original packing slips and/or invoices have been used by Carson in support of its motion for summary adjudication. Said six altered documents are the only packing slips and invoices used by Carson in support of its motion for summary adjudication and listed by Carson in its original trial exhibit list to be used at trial.

40. The AR Payments Edit Lists demonstrating payments of Carson invoices by ATN are represented by the second pages of Exhibits 19 and 21 in my deposition (Exhibits 9 and 11). They have been used in support of Plaintiff's motion for summary adjudication as exhibits 6 and 8 to Barrett Decl. (Exhibit 13), supporting the fact that ATN paid invoice 3237 in the amount of $59, 945.00.

41. In its memorandum of points and authorities in support of motion for summary adjudication, Carson admitted as follows:

---

[8]   Respective exhibits 5, 6, 7, and 8 to Barrett Decl. in support of Plaintiff's motion for summary adjudication.

"Carson also shipped, among other units, two shipments of 100 and 90 kits, respectively, in September 2010. Barrett Decl., ¶ 4 and Exs. 5, 7. ATN paid the invoices for these shipments. *Id.*, Exs. 6, 8 (invoices and payment records)….". *Id.* at 2-3.

"The fact that ATN paid for the two shipments identified by ATN as part of an alleged mixup (Barrett Decl., Exs. 6, 8) shows that there is no material dispute regarding ATN's receipt of the 90 units in question….". fn 3

There is no material dispute regarding this issue because ATN paid for both of the shipments in questions. Barrett Decl., Exs. 5-8 (packing slips, invoices and payment records for the 190 units in question). ATN's payments show there is no material dispute regardless of ATN's current assertion that it did not receive 90 kits….". *Id* at 8

A true copy of the Plaintiff's Motion for Summary Adjudication incorporating the Memorandum Points and Authorities in Support is attached hereto as **Exhibit 15** and incorporated herein by reference.

42. ATN Detail Purchase Order Receipts showing all product received from Carson and returned to Carson is attached hereto as **Exhibit 16** and incorporated herein by reference.

43. ATN records presently do not show that ATN paid invoice No. 3237, but Carson's records do, though no invoice with such number is listed in Carson's handwritten ledger of shipments by Carson to ATN (Exh. 4).

44. Carson produced no records other than said AR Payments Edit Lists (exhibits 6 and 8 to Barret. Decl.) pertaining to ATN's payment of any invoices by ATN, while it had an obligation to do so.

45. Following Carson's admissions, ATN cannot guarantee that it did not pay Carson's invoice No. 3237, if such ever existed. Mistakes happen, and Carson's records may better reflect the reality in that regard than those of ATN. Carson should not be put in as position of first failing to produce documents during the discovery, then materially altering relevant documents and yet insisting that they are genuine, then making binding judicial admissions, and then being given the benefit of relying on the records diligently produced by ATN in good faith, to relieve Carson from

being accountable for its actions. Accordingly, this issue, like any other disputed issues, must remain to be tried by a jury, unless the Court shall decide to sanction Carson for its egregious conduct.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 3, 2015, at South San Francisco, California.

/s/ *James Munn*_____
JAMES MUNN