# EXHIBIT 1

**Cathy Rogers**

| | |
|---|---|
| **From:** | Dmitry Rocklin [drocklin@atncorp.com] |
| **Sent:** | Wednesday, February 03, 2010 7:46 PM |
| **To:** | 'Greg Sherrod'; 'Cathy Rogers' |
| **Cc:** | 'Dick Barrett'; rich.barrett@carson-industries.com; 'Faina Vayner'; 'Adam McInerney'; jmunn@atncorp.com |
| **Subject:** | RE: Production / Delivery schedule for PVS - 7 Kits |
| **Attachments:** | image001.gif |

Dick/Rich/Cathy/Greg:

I hope one e-mail for all approach works.

1. Production: Latest shipments much better. Two issues are 1. Same as before on spring should be a bit longer for headset/helmet attachment and 2. buy your guys some gloves and clean compressor (lots of units with dust/plastic shavings inside and bunch of fingerprints on optics). Other than that all peachy. Also if you want to save some money you can pack units in bulk without individual cartons.

2. Deliveries: Just keep them coming...

3. Invoicing: You keep billing us at $684 per kit. You are not shipping us headsets. In one of the previous e-mails (scroll down) Cathy mentioned that headset is a $65 accessory. So, let's make it $619. Below, highlighted in gray are all the shipments from Carson to ATN. So far, as 2/2/10 we got 264 units. We returned one and need to return 8 more. So total is 255ea x $619 = $157,845. We already paid you $7,149.45. So if I could have one new invoice for $150,695.55 and one RMA for 8 units and all incoming shipment after 2/2/10 invoiced at $619... that would be great! I hope all this make sense to you guys.

Thank you,

--Dmitry Rocklin


We have received the following as of 2/2/10:

10 each PVS7 Bodies without headsets 1/5/10 – CI invoice: #2783

10 each PVS7 headsets on 1/6/10 – components owed from Inv# 2783

30 each PVS7 Bodies without headsets 1/18/10 – CI invoice # 2811

24 each PVS7 Bodies without headsets on 1/20/10 – CI invoice # 2816

80 each PVS7 Bodies without headsets 1/22/10 – CI invoice # 2824

20 each PVS7 Bodies without headsets 1/25/10 – CI invoice # 2814 – Packing slip was for 25 pieces, only 20 pieces received. Credit Memo # 2826 issued for 5 each by Carson Industries.

1

50 each PVS7 Bodies without headsets 1/29/10 – CI Invoice # 2838

50 each PVS7 Bodies without headsets 2/1/10 – Invoice not received as of 2/2/10

**RECEIVED TOTALS:**

Total bodies received: 264
Total headsets received: 10

**RETURNS / DEFECTIVE UNITS:**

1 body from 1/5/10 shipment returned to Carson Industries under RMA 10032 on 1/20/10 via UPS overnight on Carson Industries account.

10 headsets are due to go back to Carson Industries under RMA 10033.

8 PVS7 bodies are currently unusable and will need to be given an RMA # to return to Carson Industries.

**PVS7 balances as of 2/2/10:**

264 received
- 8 defective units
- 1 unit returned

---

**From:** Greg Sherrod [mailto:greg.sherrod@carson-industries.com]
**Sent:** Wednesday, February 03, 2010 8:06 AM
**To:** 'Dmitry Rocklin'
**Subject:** RE: Production / Delivery schedule for PVS - 7 Kits

Mr. Rocklin,

Our quality manager asked me to touch base with you regarding <u>10 head mount assemblies</u> you have, that were going to be shipped back to us because of a quality issue.
Could you tell me if these units have indeed been shipped, if so, could you provide tracking information ?

F.Y.I.
<u>You will receive today, 100 PVS 7-B kits, another 50 / 75 units will ship today –to your facility for Thursday arrival.</u>
I trust you have had no additional concerns with any aspect of the product over the past several deliveries ?

Please feel free to contact me at any time.

Regards,

Greg Sherrod
Production Manager
Carson Industries

2

**From:** Dmitry Rocklin [mailto:drocklin@atncorp.com]
**Sent:** Wednesday, January 27, 2010 9:04 PM
**To:** 'Greg Sherrod'
**Cc:** richard.j.barrett@carson-industries.com; rich.barrett@carson-industries.com; 'Adam McInerney'; 'Gary Tarakanov'; 'Tom Renn'; 'James Munn'
**Subject:** RE: Production / Delivery schedule for PVS - 7 Kits

Greg:

We appreciate your attention on this issue. As I mentioned in my phone conversation with Rich today we would like to resolve this delivery and move on with future business. We will work with below listed schedule to plan for the best delivery schedule to our customer. If there any changes, please let us know as soon as possible.

Very Respectfully,


--Dmitry Rocklin


**From:** Greg Sherrod [mailto:greg.sherrod@carson-industries.com]
**Sent:** Wednesday, January 27, 2010 2:04 PM
**To:** 'Dmitry Rocklin'
**Cc:** richard.j.barrett@carson-industries.com; rich.barrett@carson-industries.com
**Subject:** Production / Delivery schedule for PVS - 7 Kits

Dmitry Rocklin
President
American Technologies Network Corp.
1341 San Mateo Avenue

Mr. Rocklin,

Assembly lines within our facility are now fully operational, allowing for consistent production of the PVS- 7 Kits,

Projected shipping dates and quantities are as follows,

| Shipping Date | | | Quantity to ship |
|---|---|---|---|
| Thursday, | January 28th | 2010 | 50 |
| Friday | January 29th | 2010 | 50 |
| Monday | February 1st | 2010 | 50 |
| Tuesday | February 2nd | 2010 | 50 |
| Wednesday | February 3rd | 2010 | 50 |
| Thursday | February 4th | 2010 | 50 |
| Friday | February 5th | 2010 | 50 |

The following week, (February 8th – 12th ) I project production will increase to a minimum of 75 completed units per day (or more) through order completion.
If actual production exceeds initial expectations, we will adjust shipping and I'll notify you accordingly

3

C0439

Be assured that my full and personal attention is now focused on this project, and I will be closely monitoring all phases of the assembly, testing, packaging and shipping procedures associated with this order.

Please don't hesitate to contact me personally if you require assistance in any way.

Respectfully,

Gregory W. Sherrod
Production Manager
Carson Industries
Office, 1-423-648-6624 Ext 111
Cell, 1-256-599-5793


Please find attached revised Invoice 2783.

The carrying case should have been included in the kit price, $619. The headmount assembly is an optional item, priced at $65 ea.

Total price, as indicated on PO 11120, $684 per kit.

Thank you,

Cathy Rogers
Carson Industries, Inc.
5959 Shallowford Rd, Ste 325
Chattanooga, TN 37421
Tel 423-648-6624
Fax 423-648-6626
cathy.rogers@carson-industries.com


Report Filter Parameters:
Invoice ID = '2783 '


From: Dmitry Rocklin [mailto:drocklin@atncorp.com]
Sent: Tuesday, January 26, 2010 6:35 PM
To: 'Dick Barrett'

4

Cc: greg.sherrod@carson-industries.com
Subject: QA notes on PVS-7 kits

Dick:

I was trying to establish a new relationship and save a little money, but so far this is a nightmare.

Also I think your logistics out of order. Last invoice was for 25 units but we actually 15 and 5. Below actual numbers from my warehouse manager.

For now this is just a number game so please <u>send as many as you can</u> - we are at the second delivery order impasse!


Dmitry Rocklin
President
American Technologies Network Corp.
1341 San Mateo Avenue
South San Francisco, CA 94080
(650)989-5115 direct
(800)910-2862 x115
(650)875-0129 fax
<u>www.atncorp.com</u>
<u>DRocklin@atncorp.com</u>



Dmitry,

We have received the following as of 1/25/10:

10 each PVS7 Bodies without headsets 1/5/10
10 each PVS7 <u>headsets</u> on 1/6/10
30 each PVS7 Bodies without headsets 1/18/10
24 each PVS7 Bodies without headsets on 1/20/10
80 each PVS7 Bodies without headsets 1/22/10
20 each PVS7 Bodies without headsets 1/25/10

Total bodies received: 164
Total headsets received: 10

1 body from 1/5/10 shipment returned to Carson industries under RMA 10032 on 1/20/10 via UPS overnight on Carson Industries account.

5

C0441

We currently have the following bodies that require repair or replacement:

1 body – missing collimator/optics
1 body – missing purge screw
1 body - missing body set screw, hole over-bored
2 bodies – no power


**Adam McInerney**
**Warehouse Manager**
**ATN Corp.**
**800-910-2862 Ext 124**
**Direct: 650-989-5124**
**Fax:    650-875-0129**

6

C0442

**EXHIBIT 2**



# ATN

# Purchase Order 11453-B

Order Date 06/10/10

**American Technologies Network Corp.**
1341 San Mateo Avenue
South San Francisco, CA 94080

Telephone: 650/989-5100

**Vendor:**

Carson Industries Inc.
54 Saw Timber Drive
Hilton Head, SC 29926

**Ship To:**

Warehouse
ATN Corp
1341 San Mateo Ave
South San Francisco, CA 94080

## THIS IS A REVISED PURCHASE ORDER

| Vendor | Vendor Fax Number | Vendor Telephone Number | Ship Via | F.O.B. | Payment Terms |
|---|---|---|---|---|---|
| CARSIN | 423/648-6626 | 423/648-6624 | Best Way | SSF CA | Net 10 Days |
| Buyer | Confirming To | Remarks | Freight | Tax | Full Terms and Conditions |
|  |  | Quote 10170 | CIF | N | http://www.atncorp.com/po |

| Line | Qty. Ordered | Unit of Measure | Your Item Number | Our Item Number | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
|  | Qty. Received | Qty. Open | Item Description |  | Date Required |  |
| 1 | 500 | EACH | CK0720 | COBDPVS7 | 599.450 | 299725.00 |
|  | 0 | 500 | Body: PVS-7, w/ Nylon Case, Accessories Pack / no headset |  | 08/10/10 |  |

| | |
|---|---|
| NonTaxable Subtotal | 299725.00 |
| Taxable Subtotal | 0.00 |
| Tax | 0.00 |
| Total Order | 299725.00 |

TN Corp./Buyer is the assured party under Open Cargo policy that covers all ATN Corp. insurable interests. By accepting this Purchase Order vendor/ Supplier agrees to all terms and conditions published on www.atncorp.com/po and will be responsible for any Excess Value Coverage. Please do NOT insure, do NOT declare value for insurance purposes or otherwise use carrier Excess Value Coverage on any shipments sent via Freight Collect on ATN Corp's account and/or sent on Vendor/Supplier account if Vendor/Supplier intends to charge ATN Corp. for any insurance coverage.

Print Date: 07/28/10   10:15 AM

Vendor Original        10  487        Authorized Signature        Page    1

(/)         MENU

# ATN PURCHASE ORDER TERMS & CONDITIONS

**As used herein, "Seller" includes Seller, its subsidiaries and affiliates; "ATN" includes American Technology Network Corporation and its subsidiaries and affiliates. Seller and ATN hereby agree as follows:**

1. Services & Deliverables
2. Delivery
3. Identification, Risk of Loss & Destruction of Goods
4. Payment
5. Warranties
6. Inspection
7. Independent Contractor
8. Seller Rresponsible for Taxes and Records
9. Insurance
10. Indemnity
11. Confidentiality
12. Ownership of Work Product
13. Noninterference with Business
14. Termination
15. Remedies
16. Force Majeure
17. Severability
18. Limitation of Liability
19. Assignment; Waiver
20. Nonexclusive Agreement
21. Notices
22. Survival of Obligations
23. Governing Law
24. Entire Agreement; Modification
25. Compliance with Laws
26. Injunctive Relief

1. **SERVICES & DELIVERABLES.**

    Seller agrees to perform the services ("Services") and/or provide the goods or Service deliverables (collectively referred to as "Goods"), described in any purchase order, in accordance with the applicable purchase order, scope of work and with these Terms and Conditions ("Agreement"). Upon

103016

acceptance of a purchase order, shipment of Goods or commencement of a Service, Seller shall be bound by the provisions of this Agreement, including all provisions set forth on the face of any applicable purchase order, whether Seller acknowledges or otherwise signs this Agreement or the purchase order, unless Seller objects to such terms in writing prior to shipping Goods or commencing Services.

This writing does not constitute a firm offer within the meaning of Section 220S of the California Commercial Code, and may be revoked at any time prior to acceptance. This Agreement may not be added to, modified, superseded or otherwise altered, except by writing signed by an authorized ATN representative. Any terms or conditions contained in any acknowledgment, invoice or other communication of Seller, which are inconsistent with the terms and conditions herein, are hereby rejected. To the extent that this Agreement might be treated as an acceptance of Seller's prior offer, such acceptance is expressly made on condition of assent by Seller to the terms hereof and shipment of the Goods or beginning performance of any Services by Seller shall constitute such assent. ATN hereby reserves the right to reschedule any delivery or cancel any purchase order issued at any time prior to shipment of the Goods or prior to commencement of any Services. ATN shall not be subject to any charges or other fees as a result of such cancellation.
Back to top

2. **OELIVERY.**

Time is of the essence. Delivery of Goods shall be made pursuant to the schedule, via the carrier and to the place specified on the face of the applicable purchase order. ATN reserves the right to return, shipping charges collect, all Goods received in advance of the delivery schedule. If no delivery schedule is specified, the order shall be filled promptly and delivery will be made by the most expeditious form of land transportation. If no method of shipment is specified in the purchase order, Seller shall use the least expensive carrier. In the event Seller fails to deliver the Goods within the time specified, ATN may, at its option, decline to accept the Goods and terminate the Agreement or may demand its allocable fair share of Seller's available Goods and terminate the balance of the Agreement. Seller shall package all items in suitable containers to permit safe transportation and handling. Each delivered container must be labeled and marked to identify contents without opening and all boxes and packages must contain packing sheets listing contents. ATN's purchase order number must appear on all shipping containers, packing sheets, delivery tickets and bills of lading.
Back to top

3. **IOENTIFICATION, RISK OF LOSS & OESTRUCTION OF GOOOS.**

Identification of the Goods shall occur in accordance with Section 2S01 of the California Commercial Code. Seller assumes all risk of loss until receipt by ATN. Title to the Goods shall pass to ATN upon receipt by it of the Goods at the designated destination. If the Goods ordered are destroyed prior to title passing to ATN, ATN may at its option cancel the Agreement or require delivery of substitute Goods of equal quantity and quality. Such delivery will be made as soon as commercially practicable. If loss of Goods is partial, ATN shall have the right to require delivery of the Goods not destroyed.
Back to top

103017

4. **PAYMENT.**

MENU

As full consideration for the performance of the Services, delivery of the Goods and the assignment of rights to ATN as provided herein, ATN shall pay Seller (I) the amount agreed upon and specified in the applicable purchase order, or (ii) Seller's quoted price on date of shipment (for Goods), or the date Services were started (for Services), whichever is lower. Applicable taxes and other charges such as shipping costs, duties, customs, tariffs, imposts and government imposed surcharges shall be stated separately on Seller's invoice. Payment is made when ATN's check is mailed. Payment shall not constitute acceptance. All personal property taxes assessable upon the Goods prior to receipt by ATN of Goods conforming to the purchase order shall be borne by Seller. Seller shall invoice ATN for all Goods delivered and all Services actually performed. Each invoice submitted by Seller must be provided to ATN within ninety (90) days of completion of the Services or delivery of Goods and must reference the applicable purchase order, and ATN reserves the right to return all incorrect invoices. ATN will receive a 2% discount of the invoiced amount for all invoices that are submitted more than ninety (90) days after completion of the Services or delivery of the Goods. Unless otherwise specified on the face of a purchase order, ATN shall pay the invoiced amount within sixty (60) days after receipt of a correct invoice. Seller will receive no royalty or other remuneration on the production or distribution of any products developed by ATN or Seller in connection with or based on the Goods or Services provided.

Back to top

S. **WARRANTIES.**

**5.1 Services:** Seller represents and warrants that all Services shall be completed in a professional, workmanlike manner, with the degree of skill and care that is required by current, good and sound professional procedures. Further, Seller represents and warrants that the Services shall be completed in accordance with applicable specifications and shall be correct and appropriate for the purposes contemplated in this Agreement. Seller represents and warrants that the performance of Services under this Agreement will not conflict with, or be prohibited in any way by, any other agreement or statutory restriction to which Seller is bound.

**5.2 Goods:** Seller warrants that all Goods provided will be new and will not be used or refurbished. Seller warrants that all Goods delivered shall be free from defects in materials and workmanship and shall conform to all applicable specifications for a period of fifteen (1S) months from the date of delivery to ATN or for the period provided in Seller's standard warranty covering the Goods, whichever is longer. Seller hereby agrees that it will make spare parts available to ATN for a period of five (S) years from the date of shipment at Sellers then current price, less applicable discounts. Additionally, Goods purchased shall be subject to all written and oral express warranties made by Seller's agents, and to all warranties provided for by the California Commercial Code. All warranties shall be construed as conditions as well as warranties and shall not be exclusive. Seller shall furnish to ATN Seller's standard warranty and service guaranty applicable to the Goods. All warranties and Service guaranties shall run beth to ATN and to its customers.

If ATN identifies a warranty problem with the Goods during the warranty period, ATN will promptly notify Seller of such problem ATN s and will return the Goods to Seller, at Seller's expense. Within five

(5) business days of receipt of the returned Goods, Seller shall, at ATN's option, either repair or replace such Goods, or credit ATN's account for the same. Replacement and repaired Goods shall be warranted for the remainder of the warranty period or six (6) months, whichever is longer.
Back to top

6. **INSPECTION.**

ATN shall have a reasonable time after receipt of Goods or Service deliverables and before payment to inspect them for conformity hereto, and Goods received prior to inspection shall not be deemed accepted until ATN has run an adequate test to determine whether the Goods conform to the specifications hereof. Use of a portion of the Goods for the purpose of testing shall not constitute an acceptance of the Goods. If Goods tendered do not wholly conform to the provisions hereof, ATN shall have the right to reject such Goods. Nonconforming Goods will be returned to Seller freight collect and risk of loss will pass to Seller upon ATN's delivery to the common carrier.
Back to top

7. **INDEPENDENT CONTRACTOR.**

ATN is interested only in the results obtained under this Agreement; the manner and means of achieving the results are subject to Seller's sole control. Seller is an independent contractor for all purposes, without express or implied authority to bind ATN by contract or otherwise. Neither Seller nor its employees, agents or subcontractors ("Seller's Assistants") are agents or employees of ATN, and therefore are not entitled to any employee benefits of ATN, including but not limited to, any type of insurance. Seller shall be responsible for all costs and expenses incident to performing its obligations under this Agreement and shall provide Seller's own supplies and equipment.
Back to top

8. **SELLER RESPONSIBLE FOR TAXES AND RECORDS.**

Seller shall be solely responsible for filing the appropriate federal, state and local tax forms, including, without limitation, a Schedule C or a Form 1020, and paying all such taxes or fees, including estimated taxes and employment taxes, due with respect to Seller's receipt of payment under this Agreement. Seller further agrees to provide ATN with reasonable assistance in the event of a government audit. ATN shall have no responsibility to pay or withhold from any payment to Seller under this Agreement, any federal, state or local taxes or fees. ATN will regularly report amounts paid to Seller by filing Form 1099-MISC with the Internal Revenue Service.
Back to top

9. **INSURANCE.**

Seller shall be solely responsible for maintaining and requiring Seller's Assistants to maintain such adequate health, auto, workers' compensation, unemployment compensation, disability, liability, and other insurance, as is required by law or as is the common practice in Seller's and Seller's Assistants' trades or businesses, whichever affords greater coverage. Upon request, Seller shall provide ATN with certificates of insurance or evidence of coverage before commencing performance under this

100019

Agreement. Seller shall provide adequate coverage for any ATN property under the care, custody or control of Seller or Seller's Assistants.
Back to top

10. **INDEMNITY.**

Seller shall indemnify, hold harmless, and at ATN's request, defend ATN's, its officers, directors, customers, agents and employees, against all claims, liabilities, damages, losses and expenses, including attorneys' fees and cost of suit arising out of or in any way connected with the Goods or Services provided under this Agreement, including, without limitation, (i) any claim based on the death or bodily injury to any person, destruction or damage to property, or contamination of the environment and any associated clean up costs, (ii) Seller failing to satisfy the Internal Revenue Service's guidelines for an independent contractor, (iii) any claim based on the negligence, omissions or willful misconduct of Seller or any Seller's Assistants, and (iv) any claim by a third party against ATN alleging that the Goods or Services, the results of such Services, or any other products or processes provided under this Agreement, infringe a patent, copyright, trademark, trade secret or other proprietary right of a third party, whether such are provided alone or in combination with other products, software or processes. Seller shall not settle any such suit or claim without ATN's prior written approval. Seller agrees to pay or reimburse all costs that may be incurred by ATN in enforcing this indemnity, including attorneys' fees.

Should ATN's use, or use by its distributors, subcontractors or customers, of any Goods or Services purchased from Seller be enjoined, be threatened by injunction, or be the subject of any legal proceeding, Seller shall, at is sole cost and expense, either (a) substitute fully equivalent non-infringing Goods or Services; (b) modify the Goods or Services so that they no longer infringe but remain fully equivalent in functionality; (c) obtain for ATN, its distributors, subcontractors or customers the right to continue using the Goods or Services; or (d) if none of the foregoing is possible, refund all amounts paid for the infringing Goods or Services.
Back to top

11. **CONFIDENTIALITY.**

Seller will acquire knowledge of ATN Confidential Information (as defined below) in connection with its performance hereunder and agrees to keep such ATN Confidential Information in confidence during and following termination or expiration of this Agreement. " ATN Confidential Information" includes but is not limited to all information, whether written or oral, in any form, including without limitation, information relating to the research, development, products, methods of manufacture, trade secrets, business plans, customers, vendors, finances, personnel data, Work Product (as defined herein) and other material or information considered proprietary by ATN relating to the current or anticipated business or affairs of ATN which is disclosed directly or indirectly to Seller. In addition, ATN Confidential Information means any third party's proprietary or confidential information disclosed to Seller in the course of providing Services or Goods to ATN. ATN Confidential Information does not include any information (i) which Seller lawfully knew without restriction on disclosure before ATN disclosed it to Seller, (ii) which is now or becomes publicly known through no wrongful act or failure to act of Seller, (iii) which Seller developed independently without use of the ATN

103020

Confidential Information, as evidenced by appropriate documentation, or (iv) which is hereafter lawfully furnished to Seller by a third party as a matter of right and without restriction on disclosure. In addition, Seller may disclose Confidential Information which is required to be disclosed pursuant to a requirement of a government agency or law so long as Seller provides prompt notice to ATN of such requirement prior to disclosure.

Seller agrees not to copy, alter or directly or indirectly disclose any ATN Confidential Information. Additionally, Seller agrees to limit its internal distribution of ATN Confidential Information to Seller's Assistants who have a need to know, and to take steps to ensure that the dissemination is so limited, including the execution by Seller's Assistants of nondisclosure agreements with provisions substantially similar to those set forth herein. In no event will Seller use less than the degree of care and means that it uses to protect its own information of like kind, but in any event not less than reasonable care to prevent the unauthorized use of ATN Confidential Information.

Seller further agrees not to use the ATN Confidential Information except in the course of performing hereunder and will not use such ATN Confidential Information for its own benefit or for the benefit of any third party. The mingling of the ATN Confidential Information with information of Seller shall not affect the confidential nature or ownership of the same as stated hereunder. Seller agrees not to design or manufacture any products which incorporate ATN Confidential Information. All ATN Confidential Information is and shall remain the property of ATN. Upon ATN's written request or the termination of this Agreement, Seller shall return, transfer or assign to ATN all ATN Confidential Information, including all Work Product, as defined herein, and all copies thereof.
Back to top

12. **OWNERSHIP OF WORK PRODUCT.**

For purposes of this Agreement, "Work Product" shall include, without limitation, all designs, discoveries, creations, works, devices, masks, models, work in progress, Service deliverables, inventions, products, computer programs, procedures, improvements, developments, drawings, notes, documents, business processes, information and materials made, conceived or developed by Seller alone or with others which result from or relate to the Services performed hereunder. Standard Goods manufactured by Seller and sold to ATN without having been designed, customized or modified for ATN do not constitute Work Product. All Work Product shall at all times be and remain the sole and exclusive property of ATN. Seller hereby agrees to irrevocably assign and transfer to ATN and does hereby assign and transfer to ATN all of its worldwide right, title and interest in and to the Work Product including all associated intellectual property rights. ATN will have the sole right to determine the treatment of any Work Product, including the right to keep it as trade secret, execute and file patent applications on it, to use and disclose it without prior patent application, to file registrations for copyright or trademark in its own name or to follow any other procedure that ATN deems appropriate. Seller agrees: (a) to disclose promptly in writing to ATN all Work Product in its possession; (b) to assist ATN in every reasonable way, at ATN 's expense, to secure, perfect, register, apply for, maintain, and defend for ATN 's benefit all copyrights, patent rights, mask work rights, trade secret rights, and all other proprietary rights or statutory protections in and to the Work Product in ATN 's name as it deems appropriate; and (c) to otherwise treat all Work Product as ATN Confidential Information as described above. These obligations to disclose, assist, execute and keep

103021

confidential survive the expiration or termination of this Agreement. All tools and equipment supplied by ATN to Seller shall remain the sole property of ATN.

Seller will ensure that Seller's Assistants appropriately waive any and all claims and assign to ATN any and all rights or any interests in any Work Product or original works created in connection with this Agreement. Seller irrevocably agrees not to assert against ATN or its direct or indirect customers, assignees or licensees any claim of any intellectual property rights of Seller affecting the Work Product.

ATN will not have rights to any works conceived or reduced to practice by Seller which were developed entirely on Seller's own time without using equipment, supplies, facilities or trade secret or ATN Confidential Information, unless (i) such works relate to ATN's business, or ATN's actual or demonstrably anticipated research or development, or (ii) such works result from any Services performed by Seller for ATN.
Back to top

13. **NONINTERFERENCE WITH BUSINESS.**

During and for a period of two years immediately after the termination or expiration of this Agreement, Seller agrees not to unlawfully interfere with the business of ATN in any manner, and further agrees not to solicit or induce any employee or independent contractor to terminate or breach an employment, contractual or other relationship with ATN.
Back to top

14. **TERMINATION.**

ATN may terminate this Agreement upon written notice to Seller if Seller fails to perform or otherwise breaches this Agreement, files a petition in bankruptcy, becomes insolvent, or dissolves. In the event of such termination, ATN shall pay Seller for the portion of the Services satisfactorily performed and those conforming Goods delivered to ATN through the date of termination, less appropriate offsets, including any additional costs to be incurred by ATN in completing the Services.

ATN may terminate this Agreement, or any Service(s), for any other reason upon thirty (30) days' written notice to Seller. Seller shall cease to perform Services and/or provide Goods under this Agreement on the date of termination specified in such notice. In the event of such termination, ATN shall be liable to Seller only for those Services satisfactorily performed and those conforming Goods delivered to ATN through the date of termination, less appropriate offsets.

Seller may terminate this Agreement upon written notice to ATN if ATN fails to pay Seller within sixty (60) days after Seller notifies ATN in writing that payment is past due.

Upon the expiration or termination of this Agreement for any reason: (a) each party will be released from all obligations to the other arising after the date of expiration or termination, except for those which by their terms survive such termination or expiration; and (b) Seller will promptly notify ATN of all ATN Confidential Information or any Work Product in Seller's possession and, at the expense of

103022

Seller, and in accordance with ATN's instructions, will promptly deliver to ATN all such ATN Confidential Information and/or Work Product.
Back to top

15. **REMEDIES.**

If Seller breaches this Agreement, ATN shall have all remedies available by law and at equity. For the purchase of Goods, Seller's sole remedy in the event of breach of this Agreement by ATN shall be the right to recover damages in the amount equal to the difference between market price at the time of breach and the purchase price specified in the Agreement. No alternate method of measuring damages shall apply to this transaction. Seller shall have no right to resell Goods for ATN's account in the event of wrongful rejection, revocation of acceptance, failure to make payment or repudiation by ATN and any resale so made shall be for the account of Seller.
Back to top

16. **FORCE MAJEURE.**

ATN shall not be liable for any failure to perform including failure to (i) accept performance of Services or, (ii) take delivery of the Goods as provided caused by circumstances beyond its control which make such performance commercially impractical including, but not limited to, acts of God, fire, flood, acts of war, government action, accident, labor difficulties or shortage, inability to obtain materials, equipment or transportation. In the event ATN is so excused, either party may terminate the Agreement and ATN shall at its expense and risk, return any Goods received to the place of shipment.
Back to top

17. **SEVERABILITY.**

If any provision of this Agreement shall be deemed to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.
Back to top

18. **LIMITATION OF LIABILITY.**

IN NO EVENT SHALL ATN BE LIABLE TO SELLER OR SELLER'S ASSISTANTS, OR ANY THIRD PARTY FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT, WHETHER OR NOT ATN WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.
Back to top

19. **ASSIGNMENT; WAIVER.**

Seller may not assign this Agreement or any of its rights or obligations under this Agreement, without the prior written consent of ATN. Any assignment or transfer without such written consent shall be

103023

null and void. This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of ATN without restriction. A waiver of any default hereunder or of any term or condition of this Agreement shall not be deemed to be a continuing waiver or a waiver of any other default or any other term or condition.
Back to top

20. **NONEXCLUSIVE AGREEMENT.**

This is not an exclusive agreement. ATN is free to engage others to perform Services or provide Goods the same as or similar to Seller's. Seller is free to, and is encouraged to, advertise, offer and provide Seller's Services and/or Goods to others; provided however, that Seller does not breach this Agreement.
Back to top

21. **NOTICES.**

Except for Purchase Orders which may be sent by local mail, facsimile transmission, or electronically transmitted,, all notices, and other communications hereunder shall be in writing, and shall be addressed to Seller or to an authorized ATN representative, and shall be considered given when (a) delivered personally, (b) sent by confirmed telex or facsimile, (c) sent by commercial overnight courier with written verification receipt, or (d) three (3) days after having been sent, postage prepaid, by first class or certified mail.
Back to top

22. **SURVIVAL OF OBLIGATIONS.**

Any obligations and duties which by their nature extend beyond the expiration or termination of this Agreement shall survive the expiration or termination of this Agreement.
Back to top

23. **GOVERNING LAW.**

This Agreement shall be construed in accordance with, and disputes shall be governed by, the laws of the State of California, excluding its conflict of law rules. The Superior Court of the County of San Mateo or the United States District Court for the Northern District of California shall have jurisdiction and venue over all controversies arising out of, or relating to, this Agreement. The applicability of the UN Convention on Contracts for the International Sale of Goods is hereby expressly waived by the parties and it shall not apply to the terms and conditions of this Agreement.
Back to top

24. **ENTIRE AGREEMENT; MODIFICATION.**

This Agreement is the complete, final and exclusive statement of the terms of the agreement between the parties and supersedes any and all other prior and contemporaneous negotiations and agreements, whether oral or written, between them relating to the subject matter hereof. This

103024

Agreement may not be varied, modified, altered, or amended except in writing, including a purchase order or a change order issued by ATN, signed by the parties. The terms and conditions of this Agreement shall prevail notwithstanding any variance with the terms and conditions of any acknowledgment or other document submitted by Seller. Notwithstanding the foregoing, this Agreement will not supersede or take the place of any written agreement which is signed by both parties and covers the same subject matter as this Agreement or its related purchase orders.
Back to top

25. **COMPLIANCE WITH LAWS.**

   **25.1 General:** Seller shall comply fully with all applicable federal, state and local laws in the performance of this Agreement including, but not limited to, all applicable employment, tax, export control and environmental laws.

   **25.2 Equal Employment Opportunity:** ATN is a government contractor and is subject to the requirements of Executive Order 11246, the Rehabilitation Assistance Act. Pursuant to these requirements, the Equal Opportunity Clauses found at 41 Code of Federal Regulations sections 60-1.4 (a) (1-7), 60-250.4(a-m) and 60-741.5 (a) (1-6) are incorporated herein by reference as though set forth at length, and made an express part of this Agreement. If applicable, Seller will comply with the following Federal Acquisition Regulations: (i) 52.222-26 "Equal Opportunity", (ii) 52.222-35 "Affirmative Action for Special Disabled and Vietnam Veterans", (iii) 52.222-36 "Affirmative Action for Handicapped Workers."

   **25.3 Small Business Plan Requirements:** ATN is a government contractor and is subject to the requirements of FAR section 52.219. Pursuant to FAR 52.219.9, if Seller (i) is not considered a Small Business (as the term is defined in section 3 of the Small Business Act) and (ii) is providing Goods or Services under this Agreement in an amount greater than or equal to $500,000, and (iii) is subcontracting a portion of the Goods or Services from a third party, Seller agrees to submit to ATN a Small Business Plan or letter stating that Seller does not have a Small Business Plan and listing the approximate dollar amount to be subcontracted.

   **25.4 Hazardous Materials:** If Goods include hazardous materials, Seller represents and warrants that Seller understands the nature of any hazards associated with the manufacture, handling and transportation of such hazardous materials.

   **25.5 Customs:** Upon ATN's request, Seller will promptly provide ATN with a statement of origin for all Goods and United States Customs documentation for Goods wholly or partially manufactured outside of the United States.
   Back to top

26. **INJUNCTIVE RELIEF.**

   Seller acknowledges and agrees that the obligations and promises of Seller under this Agreement are of a unique, intellectual nature giving them particular value. Seller's breach of any of the promises contained in this Agreement will result in irreparable and continuing damage to ATN for which there

103025

will be no adequate remedy at law and, in the event of such breach, ATN will be entitled to seek injunctive relief, or a decree of specific performance.

(/) MENU

Back to top



(/)

TOLL FREE **800-910-2862**

PHONE **650-989-5100**

FAX **650-875-0129**

info@atncorp.com (mailto:info@atncorp.com)

1341 San Mateo Ave., S. San Francisco, CA 94080

Copyright © 2000 - 2015 ATN Corp. All rights reserved.

103026