**Pages 1 - 47**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Nathanael M. Cousins, Judge

CARSON INDUSTRIES, INC.,          )
                                  )
          Plaintiff,              )
                                  )
  VS.                             )     **NO. CV 14-1769-NC**
                                  )
AMERICAN TECHNOLOGY NETWORK       )
CORPORATION,                      )
                                  )
          Defendant.              )
_____   )

San Francisco, California
Wednesday, September 30, 2015

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                    SHEPPARD, MULLIN, RICHTER &
                    HAMPTON, LLP
                    4 Embarcadero Center - 17th Floor
                    San Francisco, CA  94111
                **BY:  DAVID A. DEGROOT, ATTORNEY AT LAW**

For Defendant:
                    JOHN JAMES HARTFORD
                    1423 Avondale Road
                    Hillsborough, CA  94010
                **BY:  JOHN JAMES HARTFORD, ATTORNEY AT LAW**

Reported By:        Pamela A. Batalo , CSR No. 3593, RMR FCRR
                    Official Reporter

| | |
|---|---|
| 1 | <u>**Wednesday - September 30, 2015**</u>                    **2:18 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---000---** |
| 4 | **THE CLERK:**  Calling CV 14-1769-NC, Carson Industries, |
| 5 | Inc., vs. American Technology Network, Corp. |
| 6 | **THE COURT:**  Good afternoon. |
| 7 | **MR. DeGROOT:**  Good afternoon, Your Honor.  State |
| 8 | appearances? |
| 9 | **THE CLERK:**  Please. |
| 10 | **MR. DeGROOT:**  David DeGroot, Sheppard Mullin.  I |
| 11 | represent plaintiff, Carson Industries, Incorporated. |
| 12 | **MR. HARTFORD:**  Good afternoon, Your Honor.  John J. |
| 13 | Hartford for the defendant/counter-claimant. |
| 14 | **THE COURT:**  Good afternoon. |
| 15 | We are here for a pretrial conference, and I received |
| 16 | your filings yesterday and some this morning, and I did receive |
| 17 | Carson's updated exhibit binder earlier today.  I have not |
| 18 | looked at it.  I mean, it looks like it just got here, ATN's |
| 19 | exhibit binder. |
| 20 | And our purpose here is to figure out what's being tried |
| 21 | and how it's going to be tried and who is going to try it and |
| 22 | what witnesses and evidence is going to be presented to the |
| 23 | jury. |
| 24 | And in that regard, it seems like there is some |
| 25 | disagreement between the parties as to what's going to be tried |

1    and what evidence is going to support those claims, so let's

2    try to figure it out.

3        First, let me inquire into the status of the notice of

4    intent to file a motion for sanctions that was filed.  I think

5    that's Document 76 that said that by the 21st of September,

6    you're going to file a motion that was going to ask for things,

7    but then you didn't file a motion asking for things, and you

8    can't get relief on something that you haven't asked for, and

9    you've now put into several filings a number of allegations

10   about Carson and Carson's counsel that aren't facts, that are

11   just things you've put in the briefs that aren't supported by

12   declarations, and there's not a motion that goes along with

13   them so I don't know what relief you're really asking for.

14       What's going to come of that?  Are you actually going to

15   file a motion and why are you filing things of -- notice of

16   things you're going to do and then not doing them?

17       **MR. HARTFORD:**  Two things.  It's been a moving target.

18   It started out with the motion for summary adjudication.  Then

19   it became the pretrial conference statement.  Then the revised

20   pretrial conference statement.

21       So rather than do this motion seriatim, it just basically

22   got -- it was a moving target.  So we're close because most of

23   it was done.  But the long and short of it is that it's our

24   contention that many, if not -- I'll leave it at that.  Many of

25   the relevant documents as part of the motion for summary

1    Adjudication were altered and necessarily deliberately altered

2    because we have before and after and we've got contrasting --

3    same document that is just different.

4        So rather than -- I mean, it's so voluminous that it's

5    difficult for me to stand here and tell you how the motion is

6    going to end up, but we're close.  We probably -- ideally I

7    would need another couple of days minimum to complete the

8    motion.

9        The reason -- and a notice of intention -- so I'll move to

10   the second point I wanted to make.  In the case law having to

11   do with such a situation, it was recommended in at least one

12   decision that before you actually file such a motion, you file

13   a notice of intention to do so.  It's a -- I don't spend all my

14   time practicing in the federal court system, but the federal

15   court system apparently approves of such a filing, that type of

16   filing.  That's why I did it.

17       So we're close to the motion.  It's going to get filed for

18   sure.  And we're concerned.

19           **THE COURT:**  Well, even if there's some authority

20   saying that it's a good idea to give notice ahead of time, what

21   your notice gave notice of is that by the 21st you're going to

22   do something.

23           **MR. HARTFORD:**  Yes.

24           **THE COURT:**  And then you didn't do what you gave

25   notice of.  So I suspect there's not authority that says you

1    should give notice that you're going to do something and then

2    not do it or if you're going to give notice, that you come back

3    and say, *I gave notice I was going to do something by the 21st,*

4    *but I'm not going to do it because something has changed*, or *I*

5    *need more time to do it because here's why I need more time to*

6    *do it*, or to give more notice than what you gave initially.

7         So you presumably wanted the Court to act in reliance on

8    your notice and to do something or you wanted the opposing

9    party to do something.  And then when you didn't follow through

10   on your notice, I guess left to me to guess as to what's going

11   to happen next.

12        **MR. HARTFORD:**  That's a fair criticism.  If it were up

13   to me and I had never read this procedural, I'll call it,

14   device you approved in the -- in this decision I referred to, I

15   would never have done it.  I would have just waited until all

16   of the different filings by the plaintiff were in, but it kept

17   becoming a moving target and still is, number one.

18        Secondly, your ruling over the weekend left me, frankly,

19   insufficient time to do everything; for example, everything

20   that you wanted timely.  I left Northern California to come

21   down here early in the morning on Monday and read your order

22   for the first time Monday -- early Monday evening, calling for

23   a 5:00 Tuesday deadline for a lot of these things.  So I

24   apologize.  I was unable to do everything that you wanted done

25   in that period of time.

1          THE COURT:  Well, the 21st wasn't my deadline.

2          MR. HARTFORD:  No.

3          THE COURT:  So one might interpret that you filed

4    something in the Court saying that you were going to file

5    something in opposition to the motion, the summary judgment

6    motion that was pending, and that you were going to file

7    something by the 21st and then you didn't.

8          MR. HARTFORD:  Correct.

9          THE COURT:  And then you didn't file something on the

10   22nd or 23rd or 24th or 25th and didn't give any indication

11   that in fact you changed our mind and weren't going to file

12   something or you changed your mind and were going to file

13   something later.  It was just radio silence.

14       So it might have been a reasonable interpretation that you

15   weren't going to file anything at all, and now you are saying

16   you are going to need a few more days.  Fair enough.  I'm

17   hearing you now.  It's the first information I've had on it

18   since your notice of intent to do something by the 21st.

19       So my feedback is that the shortness of time in between my

20   ruling and when you had to respond to it was partly caused by a

21   filing suggesting you were going to do something by a date and

22   then you didn't do it.

23          MR. HARTFORD:  Fair criticism.  However, if we -- but

24   for your ruling over the weekend, we probably would have had

25   the motion for sanctions on file by now, but it's been pushed

1   back accordingly.  So -- but what you make is a fair criticism
2   and I apologize to the Court.
3          THE COURT:  I'm not trying to break your knuckles, but
4   we have a short time until trial.  Trial is October the 13th.
5          MR. HARTFORD:  Yes.
6          THE COURT:  And at a pretrial conference, we need to
7   resolve what is going to be tried, which claims are going to be
8   tried, what evidence is going to be presented, what's in
9   dispute and what's not in dispute.
10      And my summary judgment motion -- not motion, summary
11  judgment order removed a number of the claims and offenses in
12  the case.  Not all of them.  We have to resolve what is
13  remaining, but it resolved 463 units of sales, which are part
14  of what's in the original claim.  It resolved some of the
15  defenses on those units.  And it left open the 327 that were
16  partially returned.  It left open the 90 units that were
17  allegedly delivered and, in ATN's view, not delivered, and the
18  counterclaims that go along with those partially-returned units
19  and the 90 units that may or may not have been delivered.
20  That's the big picture of what I think is in dispute for the
21  trial.
22      There are many different counterclaims asserted by ATN
23  that were not expressly addressed in the motion for summary
24  judgment.  The motion for summary judgment was, as framed by
25  Carson -- said it's got three things -- three parts to it.  It

1    was not framed as Carson is seeking to -- to have dismissed all

2    16 of the counterclaims, for example.  It didn't say Carson is

3    seeking to dismiss 13 of the counterclaims or 8 of the

4    counterclaims or certain of the affirmative defenses.  It was

5    framed as isolated to particular units delivered at certain

6    time periods.

7        So I can't stand here and say that all of the

8    counterclaims and all the defenses have been dismissed because

9    I didn't write that.  That's not what the order said.

10       When I look at the two different statements of the case

11   and the two pretrial conference statements, it looks like

12   there's not a meeting of the minds as to what is remaining of

13   ATN's counterclaims.  And I don't know that I've seen evidence

14   proffered that supports most of those counterclaims.

15       So what counterclaims do you think you're going to be

16   trying and what evidence supports them?

17       **MR. HARTFORD:**  Well, all the exhibits in support of

18   the counterclaims that we have are in the binders that we've

19   presented to the Court, and basically everything that you have

20   not --

21       **THE COURT:**  Distill it for me.  What is it you're

22   going to be asking the jury to do?

23       **MR. HARTFORD:**  Basically to find that there was a

24   breach of warranty and that we gave notice of the breach of

25   warranty and -- which is all that we were required to do under

1   the law.  We don't have to give a notice of -- in order to

2   claim breach of warranty, we are required to accept the

3   materials that were bought, ordered, in this case not paid for,

4   and the measure of damages has to do with valuation and we are

5   entitled to cover the cost of fixing, etc.

6       I thought we laid this out fairly succinctly in the

7   opposition to the motion for summary adjudication, but

8   basically --

9       **THE COURT:**  Well, that motion has been decided now so

10  the question is what remains to be tried, and tell me how many

11  units you think that you have in your remaining counterclaim so

12  we can focus on that.

13      **MR. HARTFORD:**  , Okay.  There is -- that's also a

14  different number.  But it's a number -- it's the numbers that

15  you're ruling that you did leave open to be tried.  I thought

16  your order was clear, and we're -- we were planning on trying

17  everything that you --

18      **THE COURT:**  All right --

19      **MR. HARTFORD:**  -- your order left open.

20      **THE COURT:**  I want to make sure we're seeing eye to

21  eye on what that is.

22      Do you agree that your counterclaim is as to the 327

23  partially-returned units and to the 90 that were or were not

24  delivered from Carson?

25      **MR. HARTFORD:**  Yes.

1      **THE COURT:**  And it's not more than that?  I mean,

2  there have been many other, as I understand it -- there have

3  been other deliveries over the course of time between the

4  parties.  There have been other orders.

5      I want to make sure that what's being tried is what is in

6  dispute in this case and that we're not trying things which

7  aren't in the Complaint and aren't in the counterclaim, and as

8  I view it, in the Complaint by Carson, the 327 and the 90 are

9  what's being -- are deliveries that are being -- remedies being

10  sought for.  Even though there may have been other deliveries

11  at other times, that's what in the Complaint, and the

12  counterclaim could be viewed to be broader than what was sued

13  upon, and if it is, I need to understand kind of what else is

14  out there, because I know there have been other deliveries over

15  the course of time.

16      **MR. HARTFORD:**  It's not broader than what's been sued

17  on.

18      **THE COURT:**  Then your counterclaim is about the same

19  units?

20      **MR. HARTFORD:**  Yes.

21      **THE COURT:**  All right.

22      Mr. DeGroot, do you want to --

23      **MR. DeGROOT:**  Yes, Your Honor.  Just a brief moment on

24  the assertion that there is a moving target.

25      There is no moving target, Your Honor.  I mean, we filed a

1  motion for summary judgment in the ordinary course.  It was

2  Your Honor's order commanding that an opposition be filed or

3  else it would be granted entirely that brought forth a

4  late-filed opposition around the same time -- I believe it was

5  August 19th, and I think I made this part of the record.  The

6  defendant's counsel requested an extension of time, and in that

7  request for an extension, also threatened multiple sanctions

8  motions.  That was in mid August.

9      Then you discussed the notice of intent that was filed

10  about more sanctions, so we've heard a lot about sanctions,

11  Your Honor, and there hasn't been an allegation that's been put

12  forward in any meaningful way that I can even really respond

13  to, and I'm -- and I don't see how like filing a sanctions

14  motion is going to get us very far unless we delay the trial

15  because this motion is not going to get heard until well after

16  the trial is over.

17      So that's my -- forgive me for being a little exasperated

18  on being on the receiving end of some of this stuff, but it's

19  not a moving target.

20      With regard to what's open, I believe that it is just the

21  valuation of the 327 units.  On the 90 units, this has been

22  very confusing to me because I am trying to figure out what

23  their contentions are, and I did -- in looking at the

24  transcript of the 30(b)(6) witness this morning, I did note

25  some information.  I'm happy to give you an excerpt and we can

1    discuss it further, but let me tell you what it is in a

2    nutshell.

3        Our contention is that -- this was -- this was an issue

4    that was brought up by the defendant.  And the defendant said

5    *we didn't get 90 units*.  So I asked about this at the 30(b)(6)

6    witness' deposition.  And the 30(b)(6) witness said --

7        **THE COURT:**  This is Mr. Munn.

8        **MR. DeGROOT:**  Mr. Munn, yes, sir.

9        *We did not get 90 units nor did we pay for them.*

10       So the competing contentions are we sent you 90 units and

11   you paid for them and that's not in dispute because we

12   understood their position to be we get -- we deserve a credit

13   because we paid for 90 units that we didn't get.  Mr. Munn's

14   testimony is*, We didn't get the 90 units and we didn't pay for*

15   *them either*.

16       I can give you this testimony and I can give you the

17   exhibit that was being discussed during this testimony.  I've

18   marked the portions of the testimony on this excerpt that I'm

19   happy to upload --

20       **THE COURT:**  This is the excerpt that you filed with

21   your pretrial -- revised pretrial --

22       **MR. DeGROOT:**  This is not.  This is a separate

23   excerpt and I can give it to you or I can upload it --

24       **THE COURT:**  Well, one of your motions in limine is to

25   exclude evidence that they didn't receive --

1      **MR. DeGROOT:**  Why don't I -- why don't we discuss it

2  when that motion --

3      **THE COURT:**  I think it's kind of a natural time to

4  bring it up now.

5      So what do you view the evidence on this point being?  So

6  it's Munn's deposition transcript.  What is your evidence going

7  to be that there was a delivery of the 90?

8      **MR. DeGROOT:**  We delivered it and they paid for it.

9  And so -- but the point is --

10      **THE COURT:**  Who is going to provide that testimony?

11      **MR. DeGROOT:**  Mr. Barrett.

12      But, Your Honor, the point of this is that we're looking

13  to advance the ball about our dispute.  What this dispute is

14  about, as Mr. Hartford just said, was about 880 units that we

15  shipped that weren't paid for.  The outstanding question on

16  those 880 units -- because those 880 units didn't ship until

17  December 2010 and the 90 units that have been talked about were

18  from an order in July 2010.  So our records show that they got

19  shipped in July 2010 and paid for by October 2010.

20      If we both agree that there's no money due on those and no

21  money owing on those from either side because they say *we*

22  *didn't get them and we didn't pay for them* and we say *you did*

23  *get them and you did pay for them*, then we should stick to the

24  880 units and find out what happened with those.

25      You've already decided about 463 of them.  And the only

1    reason 463 is there is because we were trying to create a

2    window to make an exception to allow you to rule on those in

3    case you felt that there was some issue that they received --

4    they didn't receive 90 but paid for them.

5         THE COURT:  Because they said in their opposition that

6    they didn't receive them.

7         MR. DeGROOT:  But, you know, like --

8         THE COURT:  When you get down to it, you're saying

9    look, if you didn't get them and didn't pay for them or you got

10   them and didn't pay for them, there is maybe not really a

11   dispute as to what the remedy should be in the end.

12        MR. DeGROOT:  Right.  Let's talk about the 880.  And

13   that's -- that's --

14        THE COURT:  When you say let's talk about the 880, I

15   have ruled on 463 of the 880.

16        MR. DeGROOT:  Let's talk about 880 minus 463.  So with

17   that in mind, then that boils us down to 327.  I think the 90

18   is -- there is nothing else to talk about with the 90 because

19   if they only returned 327, then they got 553.  We know and they

20   admit that they -- that we delivered 880 in that particular

21   order and that's -- that's what's -- that's what's in dispute.

22        THE COURT:  Let me ask ATN's counsel if you agree that

23   you got the 90 or what your view is about the 90.  Let's

24   isolate and focus on the 90 units.

25        MR. HARTFORD:  We have an odd juxtaposition of what's

1   happening.  It is conceivable that one or the other of these

2   parties is wrong.  My client testified we didn't get them, we

3   didn't pay for them.  They have asserted through a -- their

4   invoicing procedure that they did ship them and they did get

5   paid for them and that's why they sued to get money back

6   that -- that had --

7       **THE COURT:**  They sued because they said that they --

8   they understood that you were asking for some credit on that.

9       Yes?

10      **MR. DeGROOT:**  Your Honor, we didn't sue on the 90.

11  The 90 had nothing to do with our claim.  Nothing.  Zero.

12      **THE COURT:**  Well, it's part -- it's a little unclear,

13  but maybe it's part of the 880 because it's in the same time

14  frame.

15      **MR. DeGROOT:**  No, it's not.  It's absolutely not.  We

16  specified a particular purchase order and a particular invoice

17  in our Complaint, and this isn't that.  There is -- there is --

18  I can tell you -- I can look in the Complaint, if you would

19  like me to, and give you the paragraph.  But --

20      **THE COURT:**  But it was part of your summary judgment,

21  so --

22      **MR. DeGROOT:**  Only -- and just to make -- just to make

23  clear, because I obviously didn't make it clear in the motion,

24  but it was brought up because it was something that they were

25  bringing up as a defense.  They wanted a credit, which -- and I

1   wish I had had -- had noted this -- this testimony before, but

2   I'm happy to offer it to you at the appropriate moment.

3          THE COURT:  All right.  So let's view it then as part

4   of the counterclaim or a defense.

5          MR. DeGROOT:  That's fine.

6          THE COURT:  I think maybe a counterclaim is really

7   more what it is if they're saying that -- that there is a

8   dispute of fact about it.  If Mr. Munn is saying it was not

9   received and not paid for and there are -- there is evidence on

10  the other side saying it was delivered and was paid for, the

11  question is do you want to go to trial about that?  I mean, is

12  that something that's worth having a trial about?

13        What are you asking for on ATN's side?

14         MR. HARTFORD:  I suspect it's probably a five-minute

15  occupation of time during the trial, to deal with that --

16         THE COURT:  So let's do a little proffer here as to

17  what the witnesses are going to say and what you're going to

18  ask for.  If we're viewing it as part of the counterclaim, just

19  theoretically, are you asking for something about these 90

20  units, and what declaration or remedy is ATN seeking about the

21  90 units?

22         MR. HARTFORD:  Well, we don't want -- first of all,

23  it's conceivable that my client erred in claiming that --

24         THE COURT:  They may have been wrong.

25         MR. HARTFORD:  Yeah.  That they didn't pay for it, the

1   90 units that were, I'll call it, claimed in the motion for

2   summary adjudication.  So we don't -- by -- we will know the

3   answer very soon --

4             **THE COURT:**  Well, right now --

5             **MR. HARTFORD:**  -- with definition.

6             **THE COURT:**  I think we could answer this right now

7   legally.  Maybe not factually but legally.  And I'm maybe

8   understanding this a little better now as far as where it fits

9   in with the claim and counterclaim.

10      Mr. DeGroot is saying they are not seeking, in their

11   Complaint, a remedy for these 90 units.  It was not one of your

12   claims in the Complaint.  You're not asking the jury to make a

13   finding on the Complaint that you're entitled to get some

14   compensation for these 90 units.  You're saying they're

15   delivered and they're paid for so you're not asking for any

16   money on those 90 units.  But you're anticipating that it's

17   part of the counterclaim potentially that there were 90 units

18   that were received but not paid for, even though Mr. Munn is

19   saying they weren't received, that they might be seeking some

20   sort of remedy on the counterclaim.

21      So I'm not trying to make this complicated.  You're saying

22   it's possible the client erred.  My question is are you going

23   to ask the jury to make a finding that there were -- there is

24   some money owed to ATN about those 90 units?

25             **MR. HARTFORD:**  If we paid the -- if we paid the

```
 1   53,950 -- nine hundred fifty dollars and fifty cents, then we

 2   were going to want it back.

 3        So, Your Honor, I have a request to make.  I had a

 4   repetitive closed-head injury recently.  May I sit down?

 5             THE COURT:  You certainly may.

 6             MR. HARTFORD:  I apologize.

 7             THE COURT:  You don't have to apologize.

 8             MR. HARTFORD:  I am starting to get --

 9             THE COURT:  Do you want to sit down or pull a chair

10   up?

11             MR. HARTFORD:  I'll pull a chair up.  Thank you. I

12   just feel like I'm going to --

13             THE COURT:  If you need a drink of water or --

14             MR. HARTFORD:  I feel kind of stupid because I feel

15   healthy as a horse, but there is nothing like getting your bell

16   rung.

17        So I think that covers the 53,000 and change --

18             THE COURT:  How are you going to figure out if the

19   money was actually paid or not?  Is there a further

20   investigation you are doing or --

21             MR. HARTFORD:  Yes.

22             THE COURT:  And which witness is it that is going to

23   give you the answer to that question?

24             MR. HARTFORD:  Mr. Munn.

25        And we may be able to tell you on the day of trial that
```

```
1    it's no longer an issue.  Or before.

2              THE COURT:  Well, it sounds like something that we

3    could figure out before.  This case has been going on since

4    2014.  The rules are designed to not wait until the day of

5    trial.

6         I just did a trial here a few weeks ago.  We have a lot of

7    busy jurors who have all got jobs and families, and I don't

8    want to bring them in here if we don't have to have them in

9    here if there's not a live dispute.

10        And so we're going to need to figure out what you're

11   claiming before the first day of trial, and also that way

12   Carson gets a chance to respond and defend.

13             MR. DeGROOT:  Your Honor, would you allow me to share

14   with you the documents that I think open --

15             THE COURT:  Yes.

16             MR. DeGROOT:  -- and close the -- so let me give this

17   to opposing counsel and let me give this to Ms. Harrell for

18   you.  And, Your Honor, I'll file this under a declaration.

19             THE COURT:  Yes.  Tell me what this means.

20             MR. DeGROOT:  So this is a portion of the transcript

21   of Mr. Munn, the 30(b)(6) witness.  If you look, I have the

22   section where Exhibit 2 was discussed early in the deposition.

23   On page 14 -- so Exhibit 2 is -- was identified by Mr. Munn as

24   a document that ATN prepared as part of its litigation

25   presentation to determine whether or not certain units were
```

1    delivered to them or not.

2        And they noted that Exhibit 11031, there is a blank on

3    *received* and then on 11024, they apparently received 100 of

4    those, and there was some confusion about whether those were

5    both -- you know, what the status of both of those were.

6        **THE COURT:**  I'm sorry.  This is an ATN document or a

7    Carson document, the chart itself?

8        **MR. DeGROOT:**  It's an ATN document.  So on page 13, I

9    asked the question -- I said, *but you paid -- you paid for*

10   *either 90 or 100 units.  You didn't pay for 190 units between*

11   *those two items*, and Mr. Munn said, *Correct*.

12       And then further on, on page 16 starting at line 23, I

13   asked, *Do ATN's records reflect payment on a shipment that it*

14   *didn't receive?*  And Mr. Munn said, *There's two invoices listed*

15   *here and one we received and one we didn't and I think that --*

16   *and I think they had the invoices backwards and we paid one of*

17   *them, but we didn't receive the other*.

18       Okay.

19       **MR. HARTFORD:**  Clear as mud.  That's what we need to

20   clarify.

21       **MR. DeGROOT:**  But what is clear, Your Honor, is that

22   they say they didn't pay.  Okay.  So what's the beef?

23       **THE COURT:**  Counsel, you've got your client raising

24   his hand behind you.

25       **UNIDENTIFIED SPEAKER:**  May I approach, Your Honor?

1    May I talk to counsel?

2              **THE COURT:**  Yes, please.

3              **MR. HARTFORD:**  But I'm reading -- just one second.

4    I'm reading on page 17, and the testimony of Mr. Munn is, *And I*

5    *think they had the invoices backwards and we paid one of them*

6    *but we didn't receive the other.*

7         So what that translates to is I believe that the

8    interpretation by Carson was that they -- Carson was owed the

9    53,900 and change, but it's unclear to me, from not only this

10   exhibit but the testimony, what was paid, what was received

11   action and what wasn't.

12        So all I can promise you is that we will know in the next

13   couple of days and we'll inform the Court and counsel.

14             **THE COURT:**  Well, here's what I know right now.  Right

15   now Mr. DeGroot is here as an agent for Carson.  They're not

16   asking for -- they're not asking for a -- for their money back.

17   In this lawsuit, they're not saying that they want a remedy on

18   those 90 units.

19             **MR. HARTFORD:**  But if we paid for -- if we paid for 90

20   units that weren't received, we want the money back in the

21   counterclaim.

22             **THE COURT:**  Right.  And if you're going to have a

23   trial on that, you have to have evidence that says that you did

24   pay.

25             **MR. HARTFORD:**  Yes.

1          THE COURT:  And are entitled to your money back.

2          MR. HARTFORD:  Yes.

3          THE COURT:  And absent that, we're not going to show

4     up here for the first day of trial without you having that

5     evidence, and I don't see it -- I don't see that this

6     deposition creates that record.

7          MR. HARTFORD:  Well, it doesn't prove that we paid it.

8          THE COURT:  Right.

9          MR. HARTFORD:  And unnecessarily.

10          THE COURT:  This does not prove that you paid it

11    unnecessarily.

12          MR. HARTFORD:  But if we did -- but we'll know in the

13    next couple of days now that it's -- because -- that's all I

14    can tell you.  We don't know as we sit here right now.

15          THE COURT:  Are there some other documents

16    underlying -- so this is kind of a summary log from ATN's

17    records.

18        Are there underlying, you know, bills of lading, other

19    things which are going to come into play to either establish

20    that the 90 units were delivered or not?

21          MR. DeGROOT:  Talk about a moving target, Your Honor,

22    I mean, the -- I can barely figure out what they're contending

23    and we're two weeks before trial.  So, you know, it's just --

24    my client has a -- you know, there's -- this stuff hasn't been

25    an issue, and the proof that we've put forward is that we

1    shipped it out, we sent an invoice and our payment records show

2    that it got paid.  And, you know --

3        **THE COURT:**  The 53,950?

4        **MR. DeGROOT:**  Right.  And if their position is that

5    they didn't pay it and didn't receive it, then what are we

6    going to waste time -- you know, we're going to waste time on

7    trying to get the jury to find the fact that no one is

8    contending?  I just think that's -- that's -- that's not --

9    that's not going to be a good use of the Court's time.

10        **THE COURT:**  Mr. Hartford, is there a document in here

11    that you've given me that has more information about the 90 and

12    whether they were delivered or not?

13        **MR. HARTFORD:**  I'd say unlikely.  But it was admitted

14    by -- in the motion.  I mean, that the 53,000 and change was

15    paid.  This is -- this is the point.  I'd call that a judicial

16    admission which in terms of whether we can support -- whether

17    we have the evidence right now as to what has been admitted by

18    Carson --

19        **THE COURT:**  Well, they're saying they did pay it and

20    they're saying they delivered.

21        **MR. HARTFORD:**  They're saying that -- they're saying

22    they didn't ship it and they didn't get paid for it.

23        **MR. DeGROOT:**  What I'm pointing out, Your Honor, is

24    we've taken the position because our records reflect that

25    according to our records, those were shipped, those were paid

1  for.

2         **THE COURT:**  They're saying they shipped and paid for.

3         **MR. DeGROOT:**  But what I, as counsel for Carson trying

4  to get this case ready for trial, am saying is what ATN is

5  saying is that we didn't get it and we didn't pay for it.  And

6  so if that's their position, it doesn't matter because it's

7  their counterclaim.  It's their counterclaim.

8         **THE COURT:**  Mr. Hartford, the evidence you need to

9  have to move this claim forward, if you're going to seek

10  recovery of $53,000, they're conceding that the money was paid,

11  so it's not that you have to establish that the money was paid.

12  You would need to establish that the goods were not delivered.

13         **MR. HARTFORD:**  Correct.

14         **THE COURT:**  And so my question to you is what evidence

15  is there that the goods were not delivered?

16         **MR. HARTFORD:**  Two things.  One, they said they --

17  well, as I sit here right now, I can't tell you.

18         **THE COURT:**  All right.  So my tentative view is to

19  grant the motion in limine on this topic filed by Carson, which

20  is to exclude any evidence of a failure to deliver, which would

21  effectively mean that the claim on the 90 would be dismissed.

22     I'll give you two days to point me to some evidence in the

23  record that says something -- and I'll ask Mr. DeGroot to file

24  what you've just given me so that that will be in the record.

25         **MR. DeGROOT:**  Thank you, Your Honor.

1     **THE COURT:**  I think it supports the granting of the

2   motion in limine, but I'll give you two days if there is some

3   other evidence, either what Mr. Munn said or some other

4   documentary evidence -- and, again, just trying to be very

5   precise as to what I'm looking for, some evidence that as to

6   these 90, that they were not, in fact, delivered.

7     **MR. HARTFORD:**  Fair.

8     **THE COURT:**  And if there is no evidence that they were

9   not delivered and the evidence -- the only evidence in the

10   record is that they were delivered and paid for, then there is

11   not an issue in dispute.  We're not going to have a trial on

12   that issue.  All right.  So it's a long -- go ahead.

13     **MR. DeGROOT:**  Your Honor, the only other thing I would

14   say is that the evidence should be limited to what is in -- has

15   been discovered, you know, by now.

16     **THE COURT:**  That's going to be true as to everyone.

17   So it's pointing to something that's in the record, something

18   that's been discovered between the parties, so something else

19   that Mr. Munn said at a deposition or some other document that

20   you've exchanged from each other or something else that was

21   presented to me at summary judgment, not a creation of a new

22   document that doesn't already exist.

23     All right.  That leaves -- and I thank you for bearing

24   with me as we figured all that out.

25     **MR. DeGROOT:**  Thank you for your patience, Your Honor.

1      **THE COURT:**  The 327.  So there were 327 units that

2  were described by the parties as being partial returns,

3  portions not, pictures of components, and I couldn't figure it

4  out sufficiently to grant summary judgment as to what the

5  valuation of those parts should be and the complete record of

6  what was moving back and forth.

7      So on this issue, the parameters are 327 and there could

8  be some resolution within that 327, and how are we going to try

9  that?

10     **MR. HARTFORD:**  Well, it's our position 419 were

11  returned.  And I believe that that was set forth in the

12  opposition to the motion for summary adjudication.

13     So it's 419, which includes the 327.

14     **THE COURT:**  All right.  Well, when I started the

15  hearing and I was trying to understand what the claims are --

16  and I wrote down what you said -- the summary judgment motion

17  referenced 327 as being the partial number of returns.

18     **MR. HARTFORD:**  I had your order in front of me when I

19  said that.  I believed that your order established the 327 as

20  the number that we were dealing with.  But the real number,

21  evidentiary-wise -- and we do have the evidence for that in the

22  binders -- is that there were 419 units actually returned.

23     And we believe that was set forth in the opposition to the

24  motion for summary adjudication.  But I -- I took your -- your

25  ruling as essentially gospel on that number earlier today.

1    **THE COURT:**  All right.  My rulings are not gospel, but

2    I am trying to just figure out the very basic level here,

3    what's in dispute, what's the jury going to need to decide?

4    So you're telling me now that it's 419 is what you assert

5    are the facts of the number of units that were returned?

6    **MR. HARTFORD:**  Correct.

7    **THE COURT:**  But you view it as being 327?

8    **MR. DeGROOT:**  That's right, Your Honor.  And I could

9    just give you just a small bit of background on how those

10   numbers are constituted.

11   If you -- when a customer wishes to send back material,

12   the normal way that's done is to get what's called an RMA

13   number.  So you call up your vendor and you say -- at least

14   with this -- with my client.  You get what's called an RMA

15   number, which I think it stands for *Request for Material*

16   *Adjustment.*

17   And that gives you an authorization to send goods back,

18   and you include that when you send the goods so that when they

19   show up at the vendor, the vendor knows what to do with them

20   and where they came from and why they're coming in, and they're

21   expecting them.

22   So in, I believe, June of 2010 -- and this is in our trial

23   exhibits -- ATN sent a shipment of returned goods, and

24   immediately after receipt of that shipment, Carson sent an

25   e-mail back to ATN saying, *Here's what we got.  We received 227*

1    *units.*  And like -- you know, *some of them were for an RMA that*

2    *was -- that we gave you last November.*  And then there was an

3    additional RMA for -- I think that was 36 units.  There was an

4    additional RMA of 150 units, and then on top of that, there

5    were 41 more units beyond those two; right?

6         And the day -- I believe the day or two after that

7    shipment was sent, Carson sent an e-mail to ATN saying, *Here is*

8    *an RMA for the other 41 that you've already sent along.*  All

9    right?  That was 227 units.  In July, another 100 units got

10   sent.  There is no dispute about those.

11        Where the difference comes in, Your Honor, is they're

12   double-counting the 36 units because they're counting them

13   twice on the same RMA.  They claim that they sent 242 units in

14   that large shipment.  We sent contemporaneous correspondence --

15             **THE COURT:**  242 rather than 227?

16             **MR. DeGROOT:**  Yes.  So that's another 15 difference.

17   And then the 41 is they claim that they sent another 41 in

18   February 2012 that we issued the RMA on 41 units that were part

19   of the mid June 2011 package.

20        And the fact that those numbers add up in that way, I

21   mean, maybe we're going to have a trial on this, but they're

22   double-counting two numbers, and there's a difference of

23   opinion between they say they packed 242, and we sent them

24   contemporaneous correspondence that they never responded to

25   that it was 227.

1     **THE COURT:**  All right.  Do you agree and understand

2     that they're asserting that the returns were 419?  We're

3     talking about the same -- this sounds like there is a

4     difference in counting --

5     **MR. DeGROOT:**  I understand how they get there, and I'm

6     just explaining to you what the -- what we think the proof is

7     going to show.

8     **THE COURT:**  All right.  So between the parties, you're

9     saying -- *Carson*, when I say *you* -- is asserting 327 and ATN is

10    asserting 419 were the number of partial returns, and that's a

11    factual dispute.  All right.  At least I understand the

12    numbers.

13    Give me more, just so I'm getting a proffer as to what the

14    evidence is going to show, about the portion of the units that

15    were returned.  Was it -- you know, give me some more color as

16    to how this was physically accomplished.  What is the testimony

17    going to show?  Was it half the box, three quarters of the box?

18    Which components of it?  Was it consistent?  And how are you

19    going to put that evidence in?

20    **MR. DeGROOT:**  Yeah.  My client is going to testify

21    about this.  I believe that the testimony is going to be that

22    there is only a portion of the kits that were sent and that

23    there were -- portions that weren't sent were portions that

24    were useful and not de minimis.

25    I understand that ATN contends that there were marginal

1   pieces like eye covers and little zip bags and things.  That's

2   not the testimony that I understand that Carson is going to

3   give.  What Carson is going to say is you send back a piece,

4   but then the rest of it that you kept was not only useful, you

5   could go and add the components that you sent back to us to

6   that kit and make your own kit.

7           **THE COURT:**  I'll hear what ATN says.  Is the testimony

8   going to be that it was 10 percent of the value was kept by

9   ATN?  Ninety percent was kept by ATN?  Give me the order of

10  magnitude of like --

11          **MR. DeGROOT:**  I think it was over half.

12      Your Honor, Trial Exhibit 13 is our -- you know, the

13  summary that was done by my client.  There's different parts

14  that we calculated to be kept and --

15          **THE COURT:**  And that ends with a credit of 75,778;

16  right?

17          **MR. DeGROOT:**  That's a credit.  So what our claim

18  would be is 327 units, and, you know, take the full price, you

19  know, just shy of 600 bucks a units.  That's the starting

20  number.  And then subtract out that 75,778 and that's our

21  claim.

22          **THE COURT:**  And 75,778 was the credit that was given?

23          **MR. DeGROOT:**  Was the credit, right.  That's right.

24          **THE COURT:**  Mr. Hartford, your counterclaim is on

25  four -- your view, first, was a facts question, was it 419

1    units that were returned, not 327, and then do we have a

2    disagreement about the portions of the units that were returned

3    and what the valuation of those should be?

4         MR. HARTFORD:  We will be claiming the damages that

5    are alleged in the counterclaim for those units.

6         THE COURT:  And what does your damages math add up to

7    for those units?  What do you think -- you disagree, I take it,

8    that the $75,000 credit was the right calculation.  What do you

9    think is the proper calculation?

10        MR. HARTFORD:  This is set forth on page 6 of our

11   pretrial conference -- well, actually the bottom of page 5 and

12   then up into page 6, but we're seeking the total amount of

13   $238,611.07 on line 12 of page 6 for the 419 units.

14        THE COURT:  And who will be your witness or witnesses

15   that will testify to what was returned --

16        MR. HARTFORD:  Mr. Munn.

17        MR. DeGROOT:  Your Honor, I'm a little perplexed at

18   how that amount is figured because ATN never paid for those

19   units.  So if they didn't pay for them, how are they damaged?

20        MR. HARTFORD:  Breach of warranty is a valuation and

21   covered costs, not breach of contract.  It's a different

22   measure of damages.

23        THE COURT:  You're saying you didn't pay for them?

24   You didn't pay for any of the 419?

25        MR. HARTFORD:  We accepted them and they -- it's --

1  it's not a breach of contract on those claims.  It's the breach

2  of warranty.  We covered -- we fixed them and --

3     **THE COURT:**  And you measured that as the Hitek --

4     **MR. HARTFORD:**  That's part of it, yes.

5     **MR. DeGROOT:**  Your Honor, if Hitek is repairing them,

6  then their story that they returned 90 percent of them, what is

7  Hitek repairing?

8     **MR. HARTFORD:**  I misspoke.  We paid for the 419.  So

9  the -- because we paid for them, the cost of making them

10  operable, the cover costs, is what we're seeking.  So we did

11  pay for them.  We accepted them.  We paid for them.  It's a --

12  it's a breach of warranty.

13     **THE COURT:**  And Carson made a $75,000 credit on the

14  payments.

15     **MR. DeGROOT:**  So, Your Honor, the credit is a credit

16  against the outstanding invoices that weren't paid.  Let's

17  remember, this is a case about 880 units, an invoice that other

18  than a $50,000 payment in February 2012 were unpaid.

19     **THE COURT:**  And the credit is a paper --

20     **MR. DeGROOT:**  It's a paper credit.  We're claiming

21  that much less.  And --

22     **THE COURT:**  And you want a declaration that that was a

23  proper calculation and you're deducting it from the total

24  amount.

25     **MR. DeGROOT:**  That's right.

1      **THE COURT:**  Okay.

2      **MR. DeGROOT:**  And there's -- ATN did not -- they did

3  not pay for -- I'm sorry, but that's just -- I'm -- I object to

4  sort of having to like -- like field stuff that's getting made

5  up as we go along.

6      **THE COURT:**  You don't have to object, but you have an

7  advocate's responsibility to help me understand it.

8      **MR. DeGROOT:**  Of course.

9      Your Honor, would you just allow me for a moment -- I just

10  wanted to make a calculation of --

11      **THE COURT:**  Yes.

12      **MR. HARTFORD:**  We admit that we got a credit of

13  $75,778.98 for 327 units, but we dispute the 419 versus 327 and

14  we dispute that the amount of the credit was sufficient.

15      **MR. DeGROOT:**  So I'm a little flummoxed now.  Our

16  position is that this case is now -- the thing that's going to

17  get tried to the jury is how many units did they send back, how

18  many partial returns were there, and what's the value.

19      **THE COURT:**  Let's stop there.  The issue the parties

20  contend, on the one hand, that there were 327 units partially

21  returned or that there were 419 units partially returned.

22      **MR. DeGROOT:**  That's right.

23      **THE COURT:**  And the jury is going to tell us which one

24  is right, was it 327 or 419.

25      **MR. DeGROOT:**  That's right, Your Honor.

1    THE COURT:  All right.

2    MR. DeGROOT:  And the second question is going to be

3  what was -- what was the value, you know -- you could say what

4  was the value returned or what was the value that they kept

5  and, you know, what does ATN owe Carson for what wasn't

6  returned.

7    THE COURT:  And the jury will -- can hear that the

8  credit that Carson issued at the time was 75,778.

9    MR. DeGROOT:  That's right.  So, you know, we would

10  submit to the jury that whatever -- 327 times 599.45 equals

11  196,000 minus 75,778.98 equals a little over 102,000.

12    THE COURT:  It's a $121,000 claim?

13    MR. DeGROOT:  120,000, that's right.

14    THE COURT:  Roughly.

15    MR. DeGROOT:  If they returned more and what the part

16  that they returned was worth more than we say it was worth,

17  then the jury can say, you know, you owe that much less,

18  however we would go about it, but those are the -- I believe

19  that you understand our contentions as to the two issues that

20  are at hand.

21    I would also -- there is no -- it is news that ATN paid

22  for the 419 units they allege they returned.

23    THE COURT:  And is that -- I think that there was some

24  back and forth about that issue.  So --

25    MR. HARTFORD:  We contend we paid for them.

1   Insufficient credit.

2          **THE COURT:**  What evidence is there that suggests that

3   either you paid for them in their entirety --

4          **MR. HARTFORD:**  Mr. Munn's testimony will be that we

5   did.

6          **MR. DeGROOT:**  Your Honor, I invite you to look at

7   Exhibit 2, which was prepared by Mr. Munn.  That was the

8   document that I gave you when I discussed with him --

9          **THE COURT:**  Yes.  I have it before me.

10          **MR. DeGROOT:**  And there is -- on the second line of

11   information in that document, there is an entry for a shipment

12   of 880 units.

13          **THE COURT:**  The 11158.

14          **MR. DeGROOT:**  A received quantity of 880 units and a

15   payment of $50,000.  That was the payment in February 2012.

16          **THE COURT:**  Right.

17          **MR. DeGROOT:**  And that's it.  So it's the 880 units

18   and it's a question of whether 327 of those out of those 880

19   were returned or 419 out of those 880.

20          **THE COURT:**  Mr. Hartford, what evidence do you have

21   that disagrees with this Exhibit 2?

22          **MR. HARTFORD:**  Mr. Munn will testify we paid for 419

23   units and we got a -- and we concede that we got the credit

24   of -- that I mentioned earlier and $75,778.98 --

25          **THE COURT:**  Sorry to interrupt.  I'm looking at page

1    13 of his deposition where the question was:

2         *Okay.  And then if you look back on page 1 just to*

3    *confirm, the second line of numbers, their shipment 11158 and*

4    *the total amount column, there is 527,516 and a payment amount*

5    *of 50,000; is that right?*

6         *A.  Correct.*

7         *Q.  And so ATN did not pay that whole amount?*

8         *A.  Correct.*

9         *Q.  Only 50,000.  Okay?*

10        *And then just going back to the calculation on page 2*

11   *where you take the returns of 419 and that's multiplied by the*

12   *price of 599.40; is that correct?*

13        *A.  Correct.*

14        So that seems to answer this question of whether he agreed

15   that on that 880 shipment, whether the amount paid was $50,000.

16        **MR. HARTFORD:**  Well, it's news to us that Carson

17   ever -- Carson never claimed the 419 were not paid for.  That's

18   why we didn't litigate that point.  But we know we paid it and

19   we have the document -- we will be able to prove that we paid

20   for it.

21        **THE COURT:**  This is all in the subset of the 880.  And

22   the 880 is what's referenced here in the shipment column as

23   being what they're suing on.  I mean, that's what their lawsuit

24   is about, is the seeking payment for 880 units that they assert

25   were delivered and not paid for.

1    And ATN is saying well, some of them were sent back for

2    repairs and there should be some credit given for that and

3    there was some credit given in the amount of $75,000 for it.

4    But now Carson is saying that they want payment on the

5    remainder of those units.

6        Am I correct, Mr. DeGroot?

7        **MR. DeGROOT:**  Your Honor, just page -- paragraph 6 of

8    the First Amended Complaint, we set out Purchase Order 11452

9    had a thousand units.  There were 20 units shipped on

10   October 21st; 100 on October 22nd.  Those were paid for.

11   December 15th, 880 units went out.  Plaintiff invoiced 527,516

12   on December 17, 2010, and then we also had that small $3200

13   order that you decided on summary judgment is not in dispute.

14       And then paragraph 7 after credits were returned of

15   inventory totaling 75,778.98, ATN owes $404,987.02 exclusive of

16   interest on invoices 3402 and 3478.  That's what the dispute is

17   about.

18       **THE COURT:**  And I didn't exclude the possibility at

19   summary judgment that as to those 327 units or, let's call it,

20   419, that ATN could put on evidence that those units were

21   defective, that there was notice given of a breach of warranty

22   as to those units, and that they could put on evidence of that

23   and say, *Well, we shouldn't have to pay for 327 or 419 because*

24   *we didn't get what we ordered*.  So that is still in play, as

25   far as I'm concerned.

1      **MR. DeGROOT:**  That's fine.

2          **THE COURT:**  Does that make sense to you, Mr. Hartford?

3          **MR. HARTFORD:**  Yes.

4      What I was going to propose, Judge, is in the two-day

5  period that we're going to provide further documentation to

6  you, may we likewise provide you with the documentation for the

7  payment of the 419 -- excuse me -- the 419 units and the credit

8  and clarify this because we're getting -- it's all getting

9  confused right now.

10         **THE COURT:**  All right.

11         **MR. HARTFORD:**  Plus I'm actually feeling like I'm

12 going to faint.  I hate to tell you that and I'm so embarrassed

13 that I am feeling this --

14         **THE COURT:**  Let's take a break on that issue, and why

15 don't you get a drink of water.  Do you think you will be able

16 to return here in a few minutes or --

17         **MR. HARTFORD:**  I insist on my returning.  I just --

18 you know, I'm a tough guy, but --

19         **THE COURT:**  Let's take a recess.  Get a drink of

20 water.

21     And the answer is yes, you can have a few days to point me

22 to other evidence that contradicts this, and, again, it's not a

23 search to create new evidence.  If there is somewhere else in

24 this deposition where he said something different than what I

25 just read or some other deposition where there's evidence that

1 as to these units, they were paid for, certainly direct me to

2 it.

3  It's not disputed by Carson that the amount of the credit

4 they issued was 75,778.  That's in one of their trial exhibits,

5 No. 13.  So that's their calculation.  That's also in their

6 motion for summary judgment.

7  **MR. HARTFORD:**  I thought that our pretrial conference

8 statement was clear on these remaining issues, but you wanted

9 to get -- I can see you want to get down to --

10  **THE COURT:**  I want to make sure that we're all saying

11 the same thing.  We're making some progress towards it.  I'll

12 reread what you sent me and look at your documents while we

13 take a break.

14  **MR. HARTFORD:**  This is a revised pretrial statement.

15  **THE COURT:**  Let's come back in 10 minutes.  Thank you

16 for your continued patience.

17  **MR. HARTFORD:**  Thank you, Your Honor.

18     (Recess taken at 3:16 P.m.)

19    (Proceedings resumed at 3:26 p.m.)

20  **THE CLERK:**  Please come to order.  Court is again in

21 session.

22  **THE COURT:**  Back on the record.

23  Mr. Hartford, are you okay to continue?

24  **MR. HARTFORD:**  I will, yes, Your Honor.  I -- I've

25 thought about things just in -- I'm going to go to the

1  hospital.  What happened, just to clarify this, it's so

2  embarrassing to be 71-years old --

3      **THE COURT:**  I don't want to embarrass you.

4      **MR. HARTFORD:**  -- and fit and tough and hard all my

5  life, but in January I had a heart attack, apparently.  I

6  don't -- the doctor told me that.  And I'm feeling real bad

7  right now.

8      But what -- what I am going to request of the Court is

9  that the two days that the Court has given me to clarify, what

10  I would like to do, if -- with the Court's permission, is by

11  8:00 on Monday morning, which is not really a full one more

12  day -- it's two plus, you know, the weekend -- I will file

13  everything, including the motion for sanctions.

14     These documents will explicate our position with

15  definition, and then I defer to the Court to -- as to what to

16  do with this information, whether to summon us for maybe a

17  telephone -- further pretrial conference or whatever the Court

18  wants to do.

19     But I need that time to clarify what is happening.  I

20  think that we've gone down a -- we made a wrong turn in this

21  case, and all I want to do is say it with -- almost like water

22  is wet.  I will need more than 25 pages.  I would like to go up

23  to, say, 50 --

24     **THE COURT:**  Fifty pages of what?

25     **MR. HARTFORD:**  Including exhibits because there are --

1    I'll tell you -- up to 50 pages -- how do I want to say this?

2    I think it's going to take us a lot of pages to explain how

3    we've taken a wrong turn in this case.  And -- but I will do it

4    with consummate clarity, and I would like to have our pages not

5    include -- our page limits not include the exhibits because

6    it's going to take -- it's going to take some doing to clarify

7    where we are.

8         THE COURT:  All right.  Well, as to page limits, I

9    have referred in two places here to facts, which I'm seeking.

10   So on this question of whether the 90 units were delivered or

11   not, my tentative ruling is that I find no evidence to support

12   the proposition that they were not delivered, so I just need

13   to -- I need some record evidence --

14        MR. HARTFORD:  Yes.

15        THE COURT:  -- to the contrary.  That's not going to

16   take 50 pages.

17        MR. HARTFORD:  Correct.  I was talking about the

18   motion for sanctions.  And then on the 419 --

19        THE COURT:  One moment.

20        MR. DeGROOT:  Your Honor, just if there's -- if

21   there's record evidence that they weren't delivered, then there

22   needs to be also record evidence that they weren't paid for or

23   that they were paid for.

24        THE COURT:  They were paid -- well, you can see that

25   they were paid for -- your position is they were paid for and

1   delivered.

2           MR. DeGROOT:   True.

3           THE COURT:   And you're admitting they were paid for.

4           MR. DeGROOT:   I don't know how you prove something

5   wasn't delivered.   The fact that you went ahead and paid for it

6   itself is --

7           THE COURT:   You certainly could pay for something that

8   wasn't delivered.   It could be a mistake to have done so.

9           MR. DeGROOT:   But I think it is incumbent upon the

10  defendant to then show that it was paid for because that's the

11  only way that they're damaged.

12          THE COURT:   Well, you don't dispute -- the dispute is

13  whether they were delivered or not.   That's the dispute.   And

14  right now, the only evidence I have is that they were

15  delivered; therefore, there is not a triable issue of fact on

16  it.

17          MR. DeGROOT:   There is a -- there is evidence by

18  Mr. Munn's admission that they weren't paid for -- I'm just

19  saying like that's -- I was trying to solve the problem and I

20  understand.

21          THE COURT:   All right.   I don't want to reopen the

22  debate.

23          MR. DeGROOT:   Thank you.

24          THE COURT:   But all I'm looking for is a little bit of

25  evidence, not a long explanation.

1    As to this motion for sanctions, I don't know what it is

2 you're going to bring, so --

3    MR. HARTFORD:  It's going to explain all of the issues

4 that we've discussed today.  They will be included.

5    THE COURT:  All right.  And I can't, without seeing

6 it --

7    MR. HARTFORD:  Understandably.

8    THE COURT:  I can't tell you what shape it should

9 take, but the timing is not one that's going to delay the

10 trial.  And I need to get the issues resolved as to what we're

11 trying.

12    If you're feeling sick right now, I don't want to keep

13 going, Mr. Hartford, so I need you to tell me how you're

14 feeling.

15    MR. HARTFORD:  I feel bad.

16    THE COURT:  All right.  Then I think we should end.

17    MR. HARTFORD:  I feel badly, excuse me.

18    THE COURT:  You still have good grammar.

19    The issues remaining for trial, as far as I see it, don't

20 have a huge economic value.  Carson's claim is for about

21 $120,000.  What you put in writing was a counterclaim of about

22 200 and something thousand dollars, going the other direction.

23    And so those are the poles of what we're talking about.

24 We have a jury trial requested.  I just want to throw out there

25 is this worth the time of the jurors and how much time is it

1    going to be worth to resolve those questions or is there some

2    middle ground for you to settle this case?

3         MR. DeGROOT:  Your Honor, one thing I want to raise

4    before we adjourn is I believe as to the units that were

5    delivered and not paid for and not returned in any form, once

6    that gets reduced to judgment, whether it's going to be 463 at

7    the end or 553 or some other number, I believe that we're

8    entitled to prejudgment interest on those under California law.

9    Under Civil Code 3289, that's ten percent per year.  The breach

10   would have been as of February 1 --

11        THE COURT:  That's a post judgment --

12        MR. DeGROOT:  I just -- the reason I mention it is I

13   just want to make sure that there was nothing we had to cover

14   at trial on that and I don't believe that there is, but I

15   wanted to raise it just in case you had some reservations about

16   that.

17      As to the partial returns, I don't think there is an issue

18   of prejudgment interest, but I think that that is something

19   that if there is some clarity on that, then I think that would

20   assist in the valuation of the case.

21        THE COURT:  All right.  I'm going to stop now due to

22   Mr. Hartford's statement of his health and I hope you feel

23   better and --

24        MR. HARTFORD:  Thank you.

25        THE COURT:  -- get the attention that you need.

1    I'm not giving you any promises as to what I'm going to do

2    with your motion for sanctions, but I will give you until

3    8:00 a.m. Monday to file one.

4    But I need by 5:00 on Friday the facts, if you've got

5    facts that are in evidence about the 90, and if you have facts

6    to challenge the proposition that as to the 327 or 419 units,

7    that they were paid for, you have until 5:00 on Friday to show

8    me those facts because my -- what I see before me is the

9    deposition testimony that as to those units, other than the

10   $50,000, that they were not paid for.

11   **MR. HARTFORD:**  Okay.

12   **MR. DeGROOT:**  Your Honor, just a couple of minor

13   points.

14   One, I would ask that we have until, say, Tuesday at noon

15   to respond to whatever ATN --

16   **THE COURT:**  That is fine.  You might want to wait and

17   see it and you can tell me how much time you need to respond to

18   it, but, yes, I will give you at least until then.

19   **MR. DeGROOT:**  Second thing, as to the -- this motion

20   for sanctions, I do want to put in the record that we have

21   requested information about what the problems are.  There

22   hasn't been any, you know, *these are the documents that we say*

23   *are altered and here's the other documents that we say are true*

24   *and here are the differences*.  That hasn't been provided to us.

25   We tried to figure out like as to one what the deal was

1    and we gave an explanation -- specifically most companies

2    like -- ATN as well keep a lot of records online -- in

3    databases, not online like the Internet, but within company

4    computers so that when you go and look for a record, that

5    system will print out a document that looks like what it should

6    have looked like when it was inadmissibly issued.

7        So it's not like we have -- you know, there are some paper

8    records, but there are also records that are recreated from the

9    database.

10       We tried to address this in private correspondence.  I'm

11   happy to provide that if you decide that their sanctions

12   motions needs a rebuttal.

13       I've spent more time than I care to admit on this, and

14   we'll -- we hope that we won't have to spend any more if

15   Your Honor decides that this is a squirrel that's not worth

16   chasing.

17       And lastly, I -- in a brief moment with Ms. Harrell, I

18   just wanted to ask that in case I need to get your permission,

19   that we do have the evidence cart on October 13 and that way we

20   can easily put documents in front of the jury.

21           **THE COURT:**  Yes.  You can have that.  There is more

22   pretrial things we need to cover before we have a trial.

23           **MR. DeGROOT:**  Is there a date?

24           **THE COURT:**  Next Wednesday, October 7th, I will be

25   back here in San Francisco.  My suggestion is we continue this

1    conversation at 11:00 a.m. on October 7th.

2            **MR. HARTFORD:**  Thank you, Your Honor.

3            **MR. DeGROOT:**  Thank you, Your Honor.

4            **THE COURT:**  We will see you then.  Thank you very

5    much.

6                    (Proceedings adjourned at 3:36 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                     CERTIFICATE OF REPORTER

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Monday, October 5, 2015

8

9    *Pamela A. Batalo*

10   _____
     Pamela A. Batalo, CSR No. 3593, RMR, FCRR
11   U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25