UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARSON INDUSTRIES, INC.,<br>　　　　Plaintiff,<br>　　v.<br>AMERICAN TECHNOLOGY NETWORK, CORP.,<br>　　　　Defendant. | Case No. 14-cv-01769 NC<br><br>**ORDER TO SHOW CAUSE WHY APPEAL BOND IS ADEQUATE**<br>Re: Dkt. No. 157 |

Defendant ATN filed an "undertaking" as bond for its anticipated appeal of the $601,153.74 judgment against it in this case. Plaintiff Carson now moves under Civil Local Rule 65.1(d) for a Court order requiring a further or different security or for justification of ATN's personal sureties. The Court is not persuaded that ATN's proposed bond is proper, so ORDERS ATN to show cause why its appeal bond is adequate.

**I.　BACKGROUND**

The Court has entered final judgment in Carson's favor for $601,153.74. Dkt. No. 153. ATN has stated its intention to appeal the Court's judgment and has posted an appeal bond.[1] Docket No. 154. ATN has not filed a notice of appeal.

ATN states that its undertaking has a total value of $1,202,307.48. The bond consists of the following obligations: "The interest of Marc Vayn in the property known as

---

[1] ATN uses the term "undertaking" for its proposed bond. Black's Law Dictionary (10th ed. 2014) defines an undertaking as "a promise, pledge, or engagement . . . [a] bond."
Case No.14-cv-01769 NC

1341-1343 San Mateo Avenue, South San Francisco, California 94080, San Mateo County Assessor Parcel No. 015-112-400 and 015-112- 760, under sole ownership, is $1,100,000.00 (One Million One Hundred Thousand Dollars); The interest of James Munn in the property known as 1341-1343 San Mateo Avenue, South San Francisco, California 94080, San Mateo County Assessor Parcel No. 015-112-400 and 015-112-760, under sole ownership, is $125,000.00 (One Hundred Twenty Five Thousand Dollars); The interest of Lana Vayn in the property known as 2016 BMW X6 automobile, VIN # 5uxku2c56g0n80363, under her sole ownership, is [$2,307.48]."[2] Dkt. No. 154 at 5. The interests of Marc Vayn and James Munn are backed by promissory notes. Copies of the promissory notes are attached to ATN's offered bond. Dkt. No. 154-1 at 6 (promissory note for $1,100,000.00 to Marc Vayn); Dkt. No. 154-2 at 6 (promissory note for $125,000 to James Munn).

Arguing that ATN's undertaking is inadequate, Carson moves for an order to show cause why ATN should not be required to furnish further or different security, or to require the justification of personal sureties. In the alternative, Carson moves for an order requiring ATN to post different security, specifically a bond from an admitted surety insurer for 150% of the value of the judgment or be subject to immediate execution of the judgment by Carson. Dkt. No. 157.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 62(a), a district court's judgment becomes enforceable fourteen days after judgment is entered. "At that time, a prevailing plaintiff is entitled to execute upon a judgment." *See Columbia Pictures Tel., Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1197 (9th Cir. 2001).

In general, if an appeal is taken the appellant must post a supersedeas bond to stay the execution of a judgment. Fed. R. Civ. P. 62(d). The purpose of a supersedeas bond is

---

[2] Lana Vayn's bond offer does not change the Court's calculation. This order does not resolve any concerns about Lana Vayn as a surety, although the Court does not understand why it is necessary for ATN to post a bond with $2,307.48 of security from her automobile.

Case No. 14-cv-01769 NC          2

1   to shield an appellee from a loss that could result from the stay. *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1505 n.1 (9th Cir. 1987). "The posting of a bond protects the prevailing plaintiff from the risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).

Although Federal Rule of Civil Procedure 62 provides that a supersedeas bond may be used to stay execution of a judgment pending appeal, the court has discretion to allow other forms of judgment guarantee. *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985).

Federal Rule of Civil Procedure 65.1 states that whenever the Federal Rules "require or allow a party to give security, and security is given through a bond or other undertaking with one or more sureties, each surety submits to the court's jurisdiction . . . [t]he surety's liability may be enforced on motion without an independent action." Therefore, Rule 65.1 "provides for summary proceedings for the enforcement of the liability of a surety." *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1054 (9th Cir. 2000). Rule 65.1 applies only to security required or permitted under a provision of the Federal Rules of Civil Procedure. *Dragor Shipping Corp. v. Union Tank Car Co.*, 371 F.2d 722, 724 (9th Cir. 1967); *see also* Fed. R. App. P. 8(b). It was "intended to provide a uniform rule for summary proceedings against sureties on bonds required or permitted under original Rules 65 and 73." *Bass*, 219 F.3d at 1054 (citing Advisory Committee Notes to Fed. R. Civ. P. 65, 1966 Amendment).

Likewise, under Civil Local Rule 65.1(d), the Court may issue an order to show cause why ATN "should not be required to furnish further or different security, or to require the justification of personal sureties."

### III. ANALYSIS

The question presented is whether ATN has posted a bond that protects Carson "from the risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment" under Rule 62(d). *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir.

1988). Carson's avenue to challenge the bond and ATN's proffered sureties lies in Federal Rule of Civil Procedure 65.1 and Civil Local Rule 65.1, which cover the enforcement of securities required under the Federal Rules of Civil Procedure. *Dragor*, 371 F.2d at 724.

Carson has several objections to the proposed bond. Carson claims that ATN's bond is inadequate for three reasons: "(1) [that] the sureties have no ownership interest in the South City Property, but just a promissory note from an entity that owns that property; (2) that the party liable on the note, property owner Apex, is a forfeited Delaware corporation; and (3) that the notes have no enforcement mechanism." Dkt. No. 170 at 2.

### A.  Application of California Law

In its response to Carson's motion, ATN argues that Federal Rule of Civil Procedure 62(f) mandates application of California law and that its undertaking was filed in compliance with Rule 62(f). Dkt. No. 162 at 2. Rule 62(f) provides that "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give."

However, Rule 62(f) "does not apply because California is not a state in which a judgment is automatically a lien upon the property of the judgment debtor. Rather, under California law a judgment creditor must record the judgment or an abstract thereof in order to transform a judgment into a lien on property." *Ribbens Int'l, S.A. de C.V. v. Transp. Int'l Pool, Inc.*, 40 F. Supp. 2d 1141, 1143 (C.D. Cal. 1999); California Code Civ. Proc. §§ 697.060 & 698.310 (judgment lien is "created" by recordation); *Aldasoro v. Kennerson*, 915 F. Supp. 188 (S.D. Cal. 1995) (California does not qualify under Rule 62(f)).

Under California Code of Civil Procedure § 697.310(a), ""[a] judgment lien on real property is created under this section by recording an abstract . . . of [a] money judgment[] with the county recorder." *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1025 (N.D. Cal. 2012) ("Under California law, a judgment is not a lien unless and until such time as the creditor records the judgment in the county where the debtor's property is located.").

1    Therefore, ATN's statement that it "posted the undertaking in double the amount of
2    the judgment in strict compliance with California law," does not resolve whether the bond
3    offered by sureties Marc Vayn and James Munn provides sufficient collateral for an
4    appeals bond. Dkt. No. 162 at 4.

### B.   Ownership Interest

ATN's proposed bond states that the "interests in property on which the amount of the undertaking is based, and which are relied on by each personal surety," are the interests of Marc Vayn and James Munn in real property located at 1341-1343 San Mateo Avenue, South San Francisco, CA, 94080. Docket No. 154 at 4:19-5:3. The property is described as "under sole ownership" of each of them. *Id*. at 5. However, Carson contends that "the property interests underlying [this bond] are worthless and illusory" because Marc Vayn and James Munn have no direct ownership interest in the property. Dkt. No. 157 at 3.

Carson attaches a Condition of Title Guarantee from Commonwealth Land Title for the 1341-1343 San Mateo Avenue property to its motion for an order to show cause. Dkt. No. 157-2 at 2. The Title Report reflects that 1341-1343 San Mateo Avenue is owned by Apex Commercial Holdings, LLC, not Marc Vayn or James Munn. *Id*. at 5. "Thus, instead of having 'sole ownership' of the South City Property as reflected in the Proposed Undertaking, the proposed sureties have no ownership interest in that property." Dkt. No. 157 at 3.

ATN's response has attached an appraisal from January 25, 2012, valuing the 1341-1343 San Mateo Avenue property at $4,300,000. Dkt. No. 164-2 at 5. The appraisal lists the owner of the property as Apex Commercial Holdings, LLC. *Id*. at 8. ATN also attaches a chart that lists the sale prices of properties within a two mile radius of 1341-1343 San Mateo Avenue within the last 12 months. Dkt. No. 166-2 at 1.

The question is whether James Munn and Marc Vayn have the power as personal sureties to offer for bond a property that Apex owns. ATN attaches the operating agreement of Apex, which states that "[n]either a Member nor an Economic Interest Owner may transfer, whether voluntarily or involuntarily, any portion of such person's

Case No. 14-cv-01769 NC            5

1   Membership Interest or Economic Interest, except as otherwise expressly provided for in
2   this Agreement.  For purposes of this Agreement, a 'transfer' includes, but is not limited
3   to, any sale, assignment, gift, exchange, hypothecation, collateral assignment or subjection
4   to any security interest." Dkt. No. 163-1 at 9.  The operating agreement is signed by Marc
5   Vayn and James Munn, but the following page, "Exhibit A," lists the two members as
6   Marc Morgovsky owning a 90% Membership Interest and James Munn owning a 10%
7   Membership interest.  *Id*. at 20, 21.  Another attached document lists the only two
8   members as Marc Vayn with a 90% ownership interest and James Munn with a 10%
9   ownership interest.  Dkt. No. 163-2 at 5.

10   The promissory notes attached to ATN's proposed undertaking are signed only by
11   Vayn and Munn.  Dkt. No. 154-1 at 6 (promissory note to Marc Vayn); Dkt. No. 154-2 at 6
12   (promissory note to James Munn).  Above the signature line is a title stating "Signature of
13   Borrower(s)." *Id*.  The line under each signature states that Vayn and James are members
14   of Apex Commercial Holdings LLC, but does not state that they have the authority to bind
15   Apex and its real property holdings.  It is also not clear whether they are signing the notes
16   as recipients, as indicated by the title "Borrowers," or as officers of Apex.  Moreover, the
17   final line of each promissory notes state that the note "is secured by Deed of Trust to Lana
18   Vayn as Trustee." *Id*.  Lana Vayn has not signed either promissory note.  Because no
19   representative of Apex has signed these promissory notes other than the recipients, it is not
20   clear that Apex truly endorses the notes and obligates itself or its interest in the 1341-1343
21   San Mateo Avenue property.

22   ATN's documents regarding the ownership structure of Apex do not establish that
23   James Munn and Marc Vayn have the power to offer the 1341-1343 San Mateo Avenue
24   property up for bond.  ATN needs to show, perhaps through submission of minute entries
25   from a board meeting or other proof, that the members of Apex have notice of this
26   proposed bond and consent to Munn and Vayn offering Apex's real property for a lien as
27   an appeals bond.  The terms of Apex's operating agreement make clear that assignments
28   are usually prohibited, so even if Vayn and Munn are the only two members, it is not clear

Case No. 14-cv-01769 NC               6

from ATN's own submissions that they have the power to tie up the property when it is held by Apex and not in their own names.

### C. Whether Apex Is A Forfeited Delaware Corporation

Next, Carson argues that the "Title Report reflects that Apex is a forfeited Delaware limited liability company . . . [a]s such, Apex has no ability to act." Dkt. No. 154 at 3. Under Delaware law, a Delaware corporation, including a limited liability corporation such as Apex, can become "forfeit" if it fails to keep a Delaware registered agent. Delaware Code, 8 Del. C. § 132(f)(4). Carson argues that without knowing the status of Apex, there is no way to know if it has the "ability to give anything." "In addition, if Apex's charter was indeed forfeited, its assets may have been distributed pursuant to its own operating agreement or operative corporate law. This is not addressed anywhere, and the interests of Mark Vayn and James Munn in Apex are nowhere mentioned." *Id*.

There is some confusion about the name of Apex; the members' certificates attached to ATN's response were issued at a meeting of "Apex, LLC," not Apex Commercial Holdings, LLC. Dkt. No. 163-2 at 2, 4. More importantly, Carson objects that "[a]s to the corporate standing of Apex Commercial Holdings LLC, ATN has not provided a certified copy of a good standing certificate, let along [sic] establish[ed] that Apex's execution of a promissory note was done when Apex was in good standing." Dkt. No. 170 at 2.

ATN needs to show that Apex is a corporation in good standing that can issue promissory notes worth the value being offered for the appeals bond.

### D. Enforcement Mechanism

Carson argues that "there is no effective mechanism to enforce the purported interest in the South City Property" because the deeds of trust secure promissory notes made by Apex to the sureties, Marc Vayn and James Munn. Dkt. No. 157 at 4. This is because "the obligation secured by the deeds of trust is not the sureties' obligations under the Proposed Undertaking, but rather Apex's obligations to the sureties under the promissory notes." *Id*.

Although ATN has offered notes signed by Vayn and Munn on 1341-1343 San Mateo Avenue, there is "no suggestion anywhere that these notes or deeds of trust are being endorsed and assigned to Carson.  Without such an endorsement and assignment, there is no mechanism for these interests to pass to Carson [if] Defendant's appeal is denied." *Id.*  Carson also observes that the notes "do not possess the customary waivers of notice presentment, dishonor, demand, protest and related procedures under the Commercial Code, meaning that enforcement of the notes would be very difficult." *Id.*  More importantly, only the sureties, Vayn and Munn, have signed the promissory notes attached to the undertaking.  Dkt Nos. 154-1 at 6; 154-2 at 6.  Therefore, the promissory notes on their faces do not reflect an obligation by Apex to obligate itself to the bond because no authorized officer or member of Apex has promised in his or her official capacity to bind Apex to an agreement.

ATN's response is that "a surety on a bond given in an action or proceeding submits itself to the jurisdiction of the court in all matters affecting its liability on the bond and this liability may be enforced either by civil action or by a motion 'without the necessity of an independent action' (at § 996.420-996.440).  Consequently, Plaintiff's assertion that it will not be in a position to enforce the undertaking is not well taken.  Having jurisdiction in all matters affecting personal sureties' liability on the undertaking, the Court is in a position to enforce it." Dkt. No. 162 at 3.

Carson's reply to ATN's response is that "It is the *notes* that do not have an enforcement mechanism and the undertaking does not give the Court jurisdiction over Apex to enforce the notes and deeds of trust."  Dkt. No. 170 at 3 (emphasis in original).  Therefore, the question is not whether the Court will have jurisdiction over Marc Vayn and James Munn; it is whether the proffered notes are enforceable such that they actually provide a bond protecting Carson from loss while it waits for ATN to pursue its appeal.

ATN also cites to *Atterbury v. Carpenter*, 321 F.2d 921 (9th Cir. 1963), and *United States v. Aguilar*, 813 F. Supp. 727 (N.D. Cal. 1993), for the proposition that a voluntary surety "is favored by the law."  However, neither *Atterbury* nor *Aguilar* dealt with appeal

Case No. 14-cv-01769 NC                          8

bonds. *Atterbury* examined a surety's defense where the surety was an individual who pledged stock for a loan of someone else. *Aguilar* involved a bond posted by family members of a criminal defendants. Here, the Court is not opposed to a voluntary surety, but the surety must show that it satisfies Rule 62(d)'s purpose of protecting Carson "from the risk of a later uncollectible judgment and compensates [it] for delay in the entry of the final judgment." *NLRB*, 859 F.2d at 819.

### E. Other Forms Of Surety

The Ninth Circuit has recognized that forms of guarantee other than a supersedeas bond may be used under Federal Rule of Civil Procedure 62(d). In *International Telemeter,* 754 F.2d at 1495, the court explained: "Although Federal Rule of Civil Procedure 62 provides that a supersedeas bond may be used to stay execution of a judgment pending appeal, the court has discretion to allow other forms of judgment guarantee." However, unlike here, in *International Telemeter*, the parties stipulated to the creation of an escrow account and agreed to hold funds there. *Id*. Following *Telemeter*'s reasoning, a district court in Oregon permitted an alternative method to a supersedeas bond because "[t]he escrow account at issue here amounts to a judgment guarantee. The parties voluntarily entered into an agreement to create this account pending the resolution of their dispute." *Foster v. Hallco Mfg. Co.*, 835 F. Supp. 1235, 1236 (D. Or. 1993). Here, the parties have not agreed to an alternate form of bond and Carson questions the adequacy of ATN's offered lien on the San Mateo property. Therefore, Rule 62(d) and Rule 65.1 apply and ATN's sureties are subject to the Court's jurisdiction and must show the adequacy of the proffered bond.

### IV. CONCLUSION

ATN's response does not show that the two proffered sureties, Marc Vayn and James Munn, have ownership interests in the 1341-1343 San Mateo Avenue property and that the promissory notes are actually enforceable on the property. Therefore, ATN is ordered to show cause under Civil Local Rule 65.1(d) why the Court should accept the bond as adequate.

Case No. 14-cv-01769 NC          9

ATN can do this by bringing evidence showing (1) Apex Commercial Holding, LLC's status as a corporation in good standing, (2) a clear ownership structure of Apex and proof that someone with authority to do so has approved the execution of promissory notes to Munn and Vayn and (3) that the promissory notes are enforceable for Carson. ATN must show cause why its offered bond is adequate by April 22, 2016.

**IT IS SO ORDERED.**

Dated: April 19, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 14-cv-01769 NC                    10